ARVILLA L. MADISON et al.

v.

W. E. LARMON et al.

$$\begin{array}{rr} \overline{170} & \overline{65}| \\ 180 & 444| \end{array}$$

$$\begin{array}{rr} 170 & 65| \\ 183 & 36| \end{array}$$

$$\begin{array}{rr} \overline{170} & \overline{65} \\ {}_{[}196 & {}^{9}\ 50 \end{array}$$

Opinion filed November 1, 1897—Rehearing denied December 10, 1897.

1. REAL PROPERTY—tenant in common, as to his share, owns entire and separate estate. A tenant in common is, as to his individual share, the owner of an entire and separate estate.

2. PERPETUITIES—rule against perpetuities stated. No interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest.

3. SAME—remoteness of provision of will determined from time of testator's death. The time of the testator's death is the true period from which to determine the remoteness of provisions of his will.

4. SAME—life estate vesting within time limited by rule against perpetuities may extend beyond it. A life estate is good if it vests within the time limited by the rule against perpetuities, although it may continue beyond that time.

5. SAME—estate may become vested though right of enjoyment is postponed. A contingent remainder is good if it vests within the time limited by the rule against perpetuities, although the right of enjoyment be postponed beyond that time, as the rule against perpetuities does not apply to vested remainders.

6. WILLS—use of word "parent" confines word "issue" to children. The meaning of the word "issue," when used with reference to the parent, as where the "issue" is to take the share of a deceased parent, is confined to the children of the taker.

7. SAME—when provision of will creates a contingent remainder. A devise of property arbitrarily divided into twenty-nine shares, to seventeen persons, each taking a life estate in his respective share, with remainder in fee, upon the death of all the life tenants, to the testator's grandchildren, share and share alike, creates a contingent remainder, which cannot vest until the death of the last surviving life tenant.

8. REMAINDERS—contingent remainder perishes unless it vests before preceding estate terminates. Unless a contingent remainder becomes vested before the determination of the preceding estate it must perish, and can never come into possession.

9. SAME—when life estate terminates before contingent remainder limited thereon vests, property passes to heirs. Where a life estate terminates before a contingent remainder limited thereon becomes vested, the property passes in reversion to the heirs-at-law of the testator at the time of the determination of the life estate.

170—5

10. SAME—*estate limited on contingency may fail as to one part and take effect as to another.* Where a preceding estate, upon which a contingent interest is limited, is in several persons in common or in severalty, the contingent estate may fail as to one part and take effect as to another, as one tenant may die before the contingency happens and another survive it.

11. ESTOPPEL—*one taking under a will cannot contest it as heir.* One who takes under a will cannot afterward contest it as an heir-at-law of the devised property.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

J. ERB, and D. J. HAYNES, (WILKINS & BRADBURN, of counsel,) for plaintiffs in error:

A freehold must be continuous. It implies not only the conveying of lands, but the fixing of the limits or extent of the interest conveyed. 1 Preston on Estates, 218, 252, 253; 1 Law Mag. 561.

A freehold cannot be put in abeyance by the act of the party. 1 Washburn on Real Prop. (3d ed.) 62; 1 Preston on Estates, 216; 1 Law. Mag. 557.

A life estate is a personal interest, and, like dower, not capable of inheritance. It ceases with the death of the life holder. *Dodge* v. *Pond,* 23 N. Y. 89; *Beckman* v. *Bouson,* id. 306; *Leonard* v. *Burr,* 18 id. 107; *Bascom* v. *Albertson,* 34 id. 584; *Cruickshank* v. *Home of Friendless,* 113 id. 351.

The question in expounding a will is, not what the testator meant, but what is the meaning of the words. *Bates* v. *Woodruff,* 123 Ill. 205.

A perpetuity is a limitation taking the subject thereof out of commerce for a longer period of time than a life or lives in being and twenty-one years beyond. *Hale* v. *Hale,* 125 Ill. 399.

The most frequent instances of the transgression of the rule against perpetuities occur in devises or bequests to classes, composing either individuals who may not come into existence at all during a life in being and twenty-one years afterwards, or persons who may not be

*in esse* at the death of the testator and the vesting of whose shares is postponed beyond majority.   1 Jarman on Wills, 529.

The suspension of the power of alienation must necessarily terminate, under any and all circumstances, within the period prescribed by law, or the disposition will be bad.   *Knox* v. *Jones*, 47 N. Y. 397; *Schettlar* v. *Smith*, 41 id. 328; *Ford* v. *Ford*, 70 Wis. 61; *Coggin's Appeal*, 124 Pa. St. 10.

If a remainder is void as to any of the persons entitled to take, it is void *in toto*.   *Coggin's Appeal*, 124 Pa. St. 31; *Barnum* v. *Barnum*, 26 Md. 173; Lewis on Perpetuities, 494.

Where a will is pronounced void by the court, as coming within the rule against perpetuities, the testator is held to have died intestate as to the property devised by the will.   *Tongue* v. *Nutwell*, 13 Md. 416; *Barnum* v. *Barnum*, 26 id. 174; *Deford* v. *Deford*, 36 id. 179; *Fosdick* v. *Fosdick*, 6 Allen, 148; *Mills* v. *Newberry*, 112 Ill. 123.

KERR & BARR, for defendants in error:

A court of chancery has no jurisdiction of a bill to construe a will where only legal titles are involved. *Strubher* v. *Belsey*, 79 Ill. 307.

When a subsequent condition or limitation over is void by reason of its being impossible, repugnant or contrary to law, the estate becomes vested in the first taker discharged of the condition or limitation over, according to the terms in which it was granted or devised.   If for life, it then takes effect as a life estate; if in fee, then as a fee simple absolute.   *Howe* v. *Hodge*, 152 Ill. 252.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The circuit judge, before whom this cause was heard, sustained a demurrer to the bill and dismissed the bill for want of equity.  The reasons given for the decree thus entered commend themselves to our judgment as being a proper disposition of the questions involved.  We, there-

fore, adopt such reasons as the opinion of this court. They are as follows:

"This is an action brought in this court on the equity side thereof, praying the partition and sale of certain premises known as No. 185 South Clark street, in the city of Chicago, county and State aforesaid, said premises having heretofore been devised by will of the late Henry Larmon, deceased, of Warren county, Kentucky, to certain of his children and grandchildren named in the will. The fourth clause of his will contains the entire terms, conditions and limitations of the various devises of this property, and is as follows, viz.:

"*Fourth*—I will and devise said house and lot, No. 185 South Clark street, Chicago, Illinois, as follows: I divide it into twenty-nine shares, which I bequeath as follows: To my son, Connelly, two shares, for and during his life; to his children, Genie, John, Euran, Clement and Lucian, each one share, for and during their respective lives; to my daughter, Sardinia, six shares, for and during her life; to her children Monroe, Vernon, Charles and Sydney each one share, for and during their respective lives; to her children Lilly, Jetta, Elizabeth and Mary each two shares, for and during their respective lives; to said Katie Madison and Arvilla Madison each two shares, for and during their respective lives. If said Connelly shall die leaving any of his said children alive, his two shares shall be divided equally among such of said children as may be living, to be held by them, respectively, for and during their lives. If said Sardinia shall die leaving any of her said children alive, her six shares shall be divided equally among such of said children as may be living, to be held by them, respectively, for and during their lives. If any of said children of Connelly, Sardinia or Mary shall die leaving no issue alive at the date of such death, the share or shares of such child so dying shall be equally divided among the brothers and sisters, to be held by them, respectively, for and during their lives; but if such child

dies leaving issue alive, such issue shall have the parent's share in possession, to be held till my son, Connelly, and his aforesaid children, my daughter and her aforesaid children, said Kate and Arvilla, shall all be dead; and when they shall all be dead, I will and devise said house and lot to all of my grandchildren then living, share and share alike, and if any grandchild shall be then dead leaving issue alive, such issue shall take the share the parent would have taken if living. But it is my will that the share of the rent going to each of the aforesaid children of my son, Connelly, shall go to him for his own use till such child arrives at the age of twenty-one years, and that likewise the share of the rent going to each of the aforenamed children of my daughter, Sardinia, shall go to her for her own use till such child arrive at the age of twenty-one years; but this bequest of rents to Connelly and Sardinia is personal, and upon their respective deaths the rents shall go to their respective children named, though infants. In order to carry into effect this part of my will, my executor is directed to rent and keep rented said house and lot and to distribute the net proceeds according to this will. In his management of said property he shall be governed by the majority of votes of those entitled to rents at the time. The guardian of every infant entitled to rent shall have the right to vote for such infant. Such renting and management shall continue till my son and daughter, their aforenamed children, and said Katie and Arvilla, are all dead, and after the death of my executor the proper court will appoint an administrator with this will annexed for the purpose.'

"In construing this particular will it will be necessary, in the first place, to discuss the life estates created, before considering the remainder in fee.

"The seventeen named devisees for life, (being the testator's two children and fifteen grandchildren,) each being given distinct shares in this Clark street house and lot, became, upon the testator's death, tenants in common for

life.  A tenant in common is, as to his own individual
share, in the position of an owner of an entire and sepa-
rate estate.  To illustrate what life estates are provided
for and are possible under this will, let us take Connelly's
two shares,—his separate estate of two twenty-ninths of
the property.  The first freehold or particular estate is
for the life of Connelly.  Second, if Connelly dies, then
his (Connelly's) five named sons, (grandchildren of testa-
tor,) Genie, John, Euran, Clement and Lucian, take the
two equal shares in equal parts for life.  Third, assuming
that when the will speaks of the 'brothers and sisters'
taking the interests of a deceased brother or sister (dying
without 'issue alive') that only the grandchildren, brothers
and sisters named are intended, then upon Genie dying
without issue alive, the other four named brothers would
take his interest in equal shares for their lives, respec-
tively.  Fourth, if John should then die without issue
alive, the other three named brothers would take John's
shares or interests for their lives, respectively.  Fifth,
if Euran should then die without issue, the other two
named brothers would take his interest for their lives,
respectively.  Sixth, if Clement should then die without
issue alive, Lucian, the last survivor, would take Clem-
ent's interest for his life.  Seventh, if Clement should then
die leaving issue alive, such issue would take his interest
for the life of the unspent lives of the seventeen life devi-
sees named in the will.

"Here are seven life estates in the two shares, or the
two twenty-ninths given to Connelly, which are possible
before the remainder in fee might vest.  Is any known rule
of law violated thereby?  If any, it is the rule against
perpetuities, which is defined to be, that 'no interest sub-
ject to a condition precedent is good unless the condition
must be fulfilled, if at all, within twenty-one years after
some life in being at the creation of the interest.' (Gray
on Perpetuities, sec. 201.)  In *Howe* v. *Hodge,* 152 Ill. 252,
our Supreme Court adopt this precise definition of the

rule as laid down by Gray, and adds that 'the true object of the rule is to prevent the creation of interests upon remote contingencies.' The question to be asked of any estate on condition precedent is, 'When must the contingency happen?' The time of the testator's death is the true period at which to judge of the remoteness of the provisions in his will. (*Vanderplank* v. *King*, 3 Hare, 1; Lewis on Perpetuities, 53-57, and cases cited.)

"Tested by these rules, and it will be seen that the contingency, to-wit, the death of the prior life tenant as to all the six life remainders following Connelly's death, must in every case happen within a life in being at the death of the testator, except the last,—*i. e.*, the one to the children of the last surviving brother,—and as to that, it would take effect on his death, to-wit, within twenty-one years after a life in being at testator's death, so that all the successive life estates in remainder would happen within lives in being and twenty-one years thereafter, and would not violate the rule against perpetuities, which Gray says should be properly termed the rule against remoteness. The number of lives in being that are selected makes no difference, as any number of lives *in esse* are allowed. (See Gray, sec. 189.) You cannot give successive remainders for life unless the contingency must occur within lives in being. The estate must vest within the required limits of lives in being and twenty-one years thereafter, and there can be a gift for life to unborn persons in succession, provided their estate must vest within the required limits. (Gray, sec. 206; *Brudenal* v. *Elives*, 1 East, 442; *Hodson* v. *Ball*, 14 Sim. 558.)

"The life estates given to the seventeen named devisees (children and grandchildren) are good, and took effect immediately upon testator's death. The remainder over for life to 'the brothers and sisters' of a grandchild who should die leaving no issue alive,—is that good, and who are to take such remainder? That such a gift or remainder over for life is good, see *Tricky* v. *Tricky*, 3 M. & K. 550.

"What construction should be placed upon the provision that 'if any of said children of Connelly, Sardinia or Mary shall die leaving no issue alive at the date of such death, then the shares of the child so dying shall be equally divided among the brothers and sisters, to be held by them, respectively, for and during their lives?' Does this mean the brothers and sisters of the deceased who are theretofore named in the will, and who were *in esse* at testator's death, or all the brothers and sisters, whether born before or after the testator's death? I am of the opinion that it means the latter, and that all the brothers and sisters living at the death of such grandchild would share equally, for the reason that the testator, in other parts of the will, appears careful to identify objects of his bounty by the careful use of the words 'said,' 'aforesaid,' 'named' and 'aforenamed.' It also appears by the clause creating the remainder in fee, that he contemplated the existence of grandchildren not named in his will; and I assume it to be a fact that Kate Larmon, (now Kate Stark,) daughter of Connelly Larmon, was born prior to the date of testator's death, and as the will speaks from his death, that he used the term 'the brothers and sisters,' knowing that all the children of Connelly named in the will were boys, intending to include her as capable of sharing equally with her brothers upon the death of any one of the brothers without issue him surviving.

"This construction is also based on the assumption that the words 'leaving no issue alive at the date of such death,' must be construed to mean leaving no children alive, etc. It will be observed that when indicating to whom the remainder in fee shall go, he declares that if any grandchild be then dead, 'leaving issue alive, such issue shall take the share such parent would have taken if living.' Where the word 'issue' is used with reference to the parent of such issue, as where the issue is to take the shares of the deceased parent, it must mean his children,—that is, the word 'parent' confines the word 'issue'

to the children of the taker. (*Fairchild* v. *Buchell,* 32 Beav. 158; *Sibley* v. *Perry,* 7 Ves. Jr. 552.)

"It being clear that as to the remainder in fee he uses the word 'issue' as meaning children, it will be inferred that he used it in the same sense in other parts of the will, as it is a rule that the court will not construe the same words used in different parts of the will as having different meanings, if it is possible to avoid doing so. The intention to use the words in different senses must be clear and beyond question.

"It is contended by complainant that if the term 'the brothers and sisters' includes the brothers and sisters born after testator's death, then, as an after-born brother would have a share for life in the shares left by one of the grandchildren named in the will, as supposing one of Sardinia's named children should die without issue, leaving as his brother one who was born after the testator's death, that after-born brother would share equally with the other living brothers and sisters in the estate of the deceased brother, and such after-born brother, it is contended, might live for twenty-five years after all the seventeen named life devisees had died, and therefore the remainder in fee, as to the portion held by such after-born brother, would not vest in remainder during life or lives in being and twenty-one years thereafter, but would be postponed until the death of such after-born brother, which would be beyond the limited period and void as a perpetuity.

"In the case supposed, the life estate of the after-born brother would certainly vest within the rule against perpetuities, as he takes immediately upon the death of his brother, a named devisee living at the testator's death. That such life estate may continue beyond the time limited by the rule against perpetuities,—*i. e.,* beyond twenty-one years after his brother's death,—does not invalidate the life estate. If it vests if it once commences, it will continue until the end of the life of the taker. 'An in-

terest is not obnoxious to the rule against perpetuities if it begins within lives in being and twenty-one years, although it may end beyond them. * * * And an estate for life is good if it begins within the required limits.' (Gray, sec. 232.) Nor is it true that the remainder in fee would not vest until the termination of the life estate of such after-born brother. The event upon which a contingent remainder is limited may happen, and the contingent become a vested remainder, but not to be enjoyed in possession until some fixed time or until the dropping out of an existing estate for life. There is a difference between 'vesting' and 'the enjoyment of possession,' and it is sufficient if the contingent becomes a vested remainder within the time limited by the rule against perpetuities, although the enjoyment may be postponed beyond such time. 'If an estate is given to A for life and remainder to B's oldest son in fee, the remainder is contingent until the birth of A's first born son, and then vests.' (Gray, sec. 9.) The rule is, that the contingent remainder must become vested on or before the determination of the preceding vested estate. (Gray, sec. 10.) When a remainder becomes a vested remainder, the rule against perpetuities does not apply, as it cannot apply to vested interests.

"If any grandchild dies leaving issue (children) alive, what estate does such issue take? It will be observed that such issue (children) are 'to have the parent's share in possession until my son, Connelly, and his aforesaid children, my daughter and her aforesaid children, said Kate and Arvilla, (the seventeen named devisees,) shall all be dead.' This vests a life estate in such children on the death of the parent, subject to be divested by the death of the last of the seventeen named devisees. Strictly speaking, it is a life estate *per autre vie* for the life of the survivors of the said seventeen named devisees, all of whom were in being at the testator's death. That this is a good life estate, see Gray, secs. 225-227.

"The only remaining question in this case is as to the devise of the remainder in fee. The testator declares: 'And when they,' (*i. e.*, Connelly and his aforesaid children,) 'my daughter and her aforesaid children, said Kate and Arvilla,' (the seventeen named devisees and first life tenants,) 'shall all be dead, I will and devise said house and lot to all my grandchildren then living, share and share alike, and if any grandchild shall be then dead leaving issue alive, such issue shall take the share the parent would have taken if living.' It is contended on behalf of defendants that this provision creates a vested remainder in those who are to take under it, while complainants contend it is a contingent remainder.

"It will be observed that the testator divides the lot into twenty-nine shares, and divides these twenty-nine shares among the seventeen named devisees (children and grandchildren) for life, and, after carving out these life estates on the respective shares devised, he disposes in fee of the lot as a single property, as an entirety. Therefore, the vesting of the remainder in fee, as to any particular share, does not depend solely upon the death of the life tenant of that share, but also depends upon the death of the last of the seventeen life devisees named in the will, 'when they shall all be dead,' says the testator. The remainder in fee is a contingent remainder. The learned author, Fearne, states four kinds of contingent remainders: 'Third, where the condition upon which the remainder is limited is certain in event, but the determination of particular estate may happen before it. * * * Fourth, where the person to whom the remainder is limited is not as yet ascertained or not yet in being.' This remainder would be a contingent remainder under either of these classifications. He also says the present capacity of taking effect in possession, if the possession becomes vacant, distinguishes the vested from the contingent remainder. The learned author says in illustration: 'So in case of a lease for life to A, and after the death of A and

M the remainder to be in fee, this is a contingent remainder for the particular estate. Being for the life of A, and the remainder not to commence until after the death of A and M, if A die before M the particular estate will end before the remainder commences.' (1 Fearne, pp. 5, 7.)

"The provisions of this will as to the remainder in fee are clearly within the illustration. The two grandchildren, Kate and Arvilla, are the children of Mary, a deceased daughter of the testator. These are given four shares, or two twenty-ninths each. If they both should die without issue before any of the other of the seventeen named life devisees, the remainder in fee of these four shares could not take effect in possession, for the reason the remainder-men take nothing until they, the seventeen life tenants, are 'all dead.' The remainder in fee is therefore clearly a contingent remainder. Is, therefore, the remainder in fee void? If not, what is its effect?

"If Kate should survive Arvilla she would have four shares; and suppose she should live twenty-five years longer than any of the other fifteen named devisees of a life estate, then twenty-five twenty-ninths of the property would be without any remainder vested under the will for twenty-five years, and who would take the income thereof for that period of time? Would the remainder as to these twenty-five shares be void, as being obnoxious to the rule against perpetuities, or would the remainder over as to any shares be cut off by the dropping out of the life estate of such share?

"If all the interests held in severalty should determine at one time,—that is, if all the seventeen named devisees should die at one and the same instant of time,—then the remainder as to the several shares would vest at the same time. But it cannot be supposed that the testator contemplated such an almost impossible event. The difficulty as to the remainder arises from the fact that the shares held by the several life tenants are held in severalty, and the remainder is disposed of as one property

and a distinct entity. The remainder is to take effect upon the determination, not of the life estates carved out, but upon the extinguishment of the life of all the seventeen named devisees, children and grandchildren of the testator.

"A remainder over, to vest upon the death of a stranger to the estate, is a valid remainder. 'The contingency may be postponed for any number of lives, provided they are all in being when the contingent interest is created, and the persons whose lives are taken need have no interest in the estate,' is the rule as clearly laid down by Gray, sec. 260. This rule was laid down in the leading case of *Thelluson* v. *Woodford*, where the testator directed the accumulation of the income during the lives of all his sons, grandsons and grandsons' children who should be alive at his death, and then divided into three lots. The division was sustained by Lord Loughborough, whose decree was affirmed in the House of Lords. (4 Ves. 227; 11 id. 112.) In *Cadwell* v. *Palmer*, an executory devise to take effect upon the death of twenty-eight living persons, seven only of whom were to take interests under the devise, was sustained. (1 Cl. & F. 372.) At the death of the testator, Henry Larmon, these seventeen named devisees (children and grandchildren) were all alive, so that it is seen that the remainder in fee vests upon the determination of a life in being at the testator's death,—*i. e.*, upon the death of the survivor of the seventeen,—and therefore does not contravene the law against perpetuities. 'All the candles are lighted at once, and therefore it was only the duration of one life.'

"What effect is to be given to this remainder in fee? In order to have a valid remainder there must always be a particular estate to support it. Where the remainder is a contingent remainder, the remainder must vest during the existence of the particular estate or at the instant of its determination. The rule is thus stated in Fearne: 'It has already been shown that a legal remainder must

vest either during the existence of the particular estate
(*in esse* or in right of entry) or at the very instant of its
determination, otherwise it will never take effect, conse-
quently every such determination of the preceding estate
as leaves no right of entry must effectually destroy such
contingent remainder.' (Sec. 316.) And in section 310:
'Upon the principles here laid down that a contingent
remainder must vest by the time the preceding estate
determines, it follows that an estate limited on a contin-
gency may fail as to one part and take effect as to an-
other, wherever the preceding estate is in several persons
in common or in severalty, for the particular tenant of
one part may die before the contingency happens and the
particular tenant of another part may survive it.' Unless
a contingent remainder becomes vested on or before the
determination of the preceding vested estate it can never
come into possession—it has perished. It makes no differ-
ence whether the preceding estates have ended by reach-
ing the limit originally imposed upon them, or whether
they have been cut short by merger, forfeiture or other-
wise. (Gray on Perpetuities, sec. 10.)

"To illustrate the application of these rules to the
case at bar, we will suppose that Katie Madison is the
first of the seventeen devisees to die, and dies without
issue. Her brother Arvilla takes her two shares for life.
Arvilla then dies without issue, possessed of four shares.
Having no brothers or sisters living, the life estates cre-
ated by the will in the four shares, or four twenty-ninths,
have determined with Arvilla's death. The remainder in
fee as to the four shares has perished, because it did not
vest by the time the preceding life estates determined,
and could not vest under the will until all others of the
seventeen devisees had deceased. The same thing might
happen as to the life estates vested in Connelly and his
five sons, and Sardinia and her named children. Connelly
dying, all his sons might die without issue surviving; Sar-
dinia and all her children might die without issue surviv-

ing; Katie might also die without issue, leaving Arvilla the only named life tenant in existence. The remainder in fee as to all the shares held by Connelly and his children, Sardinia and her children, would have perished. There can be no interregnum as to a freehold, or between the ending of a life estate and the vesting of the remainder.

"It is, however, certain that the remainder in fee must vest as to some of the shares, but as to what particular shares or number of shares cannot be known until the death of the last survivor of the seventeen named children and grandchildren. The remainder-men will succeed to the ownership in fee of the shares held by such survivor at his death, but which one of the seventeen named life tenants will be such survivor cannot be determined until sixteen of them have died. If it should be Arvilla, the remainder-men in fee would take the four shares held by him. The life estates in the other shares (if Connelly and Sardinia die and their children should have deceased without issue) would all have determined and the remainders have perished. If any first named life tenants, any of the seventeen, should die leaving issue (children) alive, and such issue should still be alive at the death of the last one of the seventeen, such issue would hold for life the shares which they took from their parents. The contingent remainder having become vested by the death of the last of the seventeen named devisees, it would be good to take effect in possession on the death of such last named issue.

"As to the life estates that drop out before the remainder in fee has vested, where is the fee as to the shares owned by such life tenants who have deceased?—as, for example, if Katie and Arvilla should both die without issue before the last of the seventeen? If a contingent remainder becomes impossible of vesting because of the determination of the life estate before the contingency upon which the remainder was limited has happened,—

*i. e.*, if the contingent remainder has perished,—it is the same as if it never existed. Says Gray (sec. 11): 'A future estate may be indirectly created by giving livery of seizin for one or more life estates without ultimate remainder in fee. The estate remaining in the former owner ready to come into possession on the termination of the life estate or estates is a reversion. The same result is reached when an ultimate remainder in fee is contingent. Until it vests there is a reversion to the feoffer and his heirs..' And in the note he says: 'When a conveyance is by way of use or devise, there is unquestionably, during the contingency of a remainder in fee, a reversion in the grantor or devisor, and his heirs.'

"'If the devise of a future interest is void for remoteness, but the prior devise is for life only, or other limited period, * * * the property, after the termination of the prior interest, goes to the person to whom the property which has been invalidly devised or bequeathed, goes. This person is generally the heir in case of real estate, and the residuary legatee in case of personalty. There is no difference, in this respect, between a devise or bequest void for remoteness, and a devise or bequest void for any other reason.' (Gray, sec. 248; *Tongue* v. *Nutwell*, 13 Md. 415; *Deford* v. *Deford*, 36 id. 168.) 'Void devises, like lapsed devises, go to the heir.' (1 Jarman, 646; *VanKleck* v. *Church*, 6 Paige, 604.)

"Therefore, when any life estate drops out (*i. e.*, where a life estate ceases, there being neither brother nor sister nor issue living to take for life under the will,) before the last of the seventeen life devisees dies, the persons who would be the heirs-at-law of the testator at the time of such dropping out of the life estate would take the interest as to the shares held by such life tenant at his decease. If any of the named grandchildren, who are life tenants under the will, dies leaving issue (children) him surviving, and any of such issue (children) dies before the last of the seventeen named life devisees, then the re-

mainder as to the interest held by such child, will go in reversion to the then heirs-at-law of the testator.

"The only remaining question is as to who are the remainder-men in fee. When they (the seventeen named life tenants) shall all be dead, 'I will and devise said house and lot to my grandchildren then living, share and share alike, and if any grandchild shall be then dead leaving issue alive, such issue shall take the share the parent would have taken if living.' This carries the fee, the property being required to be divided share and share alike.

"In his will the testator names all the grandchildren living at his death, except Kate Larmon, daughter of Connelly, (now Kate Stark,) and gives them life estates, and when they shall all be dead he gives to all his grandchildren,—*i. e.*, at the time the last of the named seventeen devisees (children and grandchildren) shall die,— the remainder in fee. This would include Kate Stark, if living, and all grandchildren born after the testator's death and then living. But what does the testator mean when he says, 'If any grandchild be then dead leaving issue alive, such issue to take the share the parent would have taken if living?' There does not appear upon the face of the will any reason why he should discriminate among his great-grandchildren. I am of the opinion that he did not intend to, and that his intention was to place them upon an equality (*per stirpes*) with the after-born (or not specifically named) grandchildren who might be living when the contingency happened upon which the fee was to vest. He uses the most comprehensive words, 'If *any* grandchild shall be then dead leaving issue alive, *such issue to take.*' He intended the living grandchildren to take share and share alike, and the then living issue (which we have seen means children) of *any* grandchild to take *per stirpes* the interest (or share) which the parents would have taken if the property had then been divided among all his grandchildren. The trust as to the

170—6

rents would cease as to any interest in the property upon such interest being taken as 'heir-at-law of the testator.'

"This bill is brought by complainants, as heirs-at-law, attacking the will as invalid and praying that it be so declared. The complainants are Kate Stark and her husband, and Katie Kirby (*nee* Madison) and her husband, and Arvilla Madison. The bill cannot be maintained by Katie Kirby and her husband and Arvilla Madison, because they are beneficiaries named in the will and have taken their share of the rents. They cannot take under the will as devisees and then contest it as heirs-at-law. (110 Ill. 223; 122 id. 528.)

"It follows that the demurrer in this case must be sustained, and the motion for a receiver denied."

For the reasons above stated the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*