### GLENN et al. v. HOLT et al.    (No. 1188.)

(Court of Civil Appeals of Texas. El Paso. Feb. 24, 1921. Rehearing Denied March 24, 1921.)

1. **Remainders ⬅1 — Reversions ⬅1 — Distinction between reversions and remainders stated.**

"Remainders" are created by deed or devise, whereas "reversions" are created by operation of law, and, regardless of how many estates are carved out of the owner's entire estate, a reversion will be left, provided they do not amount in quantity to his original estate, and as to all the estate except the particular part granted or devised the original owner remains the owner as he originally was.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Remainder; Reversion.]

2. **Deeds ⬅130—Where grantor by deed granted a life estate to his wife and if without issue to his legal heirs, a reversion in fee remained in the grantor.**

Where a deed from husband to wife granting a life estate to the wife provided the parties should live together as husband and wife, and further provided that if no issue be born to grantor or his wife the conveyance was intended to vest title, after termination of the life estate, in "my legal heirs in the same manner as they would inherit under the law," a reversion in fee remained in the grantor upon his dying without issue.

3. **Deeds ⬅130—Grantor's heirs cannot take as contingent remaindermen after termination of life estate to grantor's wife, but grantor retains reversion.**

Where a grantor conveyed a life estate to his wife with a remainder in favor of possible issue, and if no issue title was to vest, after termination of the life estate, in "my legal heirs in the same manner as they would inherit under the law," and grantor died without issue, the heirs could not take as contingent remaindermen, since a contingent remainder cannot be limited to the grantor's heirs, and such estate continued in the grantor as a reversion in fee, which could be conveyed by him.

4. **Estates ⬅2—Statute authorizing estates to commence in futuro has reference to estates other than reversion or remainder.**

Rev. St. 1911, art. 1111, providing that an estate of freehold or inheritance may be made to commence in futuro by deed or conveyance in like manner as by will, was enacted to abrogate the common-law rule that a freehold to commence in futuro could not be conveyed, and has reference to estates in expectancy other than estates in reversion and remainder.

Appeal from District Court, Erath County; J. B. Keith, Judge.

Suit by C. V. Glenn and others against R. T. Holt and others. From an adverse judgment, plaintiffs appeal. Affirmed.

R. L. Thompson, of Stephenville, and Marion Roberson and L. L. Crankrite, both of Fort Worth, for appellants.

Chandler & Pannill, of Stephenville, for appellees.

HIGGINS, J. On October 27, 1919, the appellants brought this suit against Mrs. Josie Troy, formerly Mrs. Josie Glenn, and others claiming under her, to recover certain lands described in a deed from A. J. Glenn to Josie Glenn, dated September 29, 1898, hereinafter copied, and for a construction of said deed. From an adverse judgment plaintiffs prosecute this appeal.

The case was tried before the court upon agreed facts, from which the following statement of the material facts is deduced:

On September 29, 1898, A. J. Glenn executed and delivered to his wife, the said Josie Glenn, a deed which reads as follows:

"The State of Texas, County of Erath.

"Know all men by these presents that I, A. J. Glenn, of the county of Erath and state aforesaid, for the consideration of the sum of one dollar to me in hand paid by Josie Glenn, and the further consideration of love and affection that I have and bear for my beloved wife, the said Josie Glenn, have granted, sold, and conveyed, and by these presents do sell and convey, unto the said Josie Glenn, of Erath county, Texas, the following described property, to wit: Lots 18 and 20, in block B, also lots 2, 4, 6, 8, 10, 12, 14, 16, 18, and 20, in block C, also 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20, in block D, all situated in the town of Bluff Dale, Texas, in Erath county, Texas, upon the following conditions and covenants, to wit: So long as I and my said wife, Josie Glenn, shall live together as husband and wife, and should I die before my said wife, then to her for the remainder of her natural life, it being intended hereby to convey to her a life estate only, and that provided we shall live together as husband and

wife, and it is further covenanted and intended herein that if issue, that is, a child or children, shall be born to me and my wife, Josie Glenn, then this conveyance is intended to vest the life estate in my said wife upon the conditions above set out, and to vest the fee-simple title in such child or children, above mentioned. Should there be no issue born to me and my said wife, then this conveyance is intended to vest the title to said property, after the termination of said life estate herein provided, in my legal heirs in the same· manner as they would inherit the same under the law.

"To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Josie Glenn, upon the conditions above set out, and I do hereby bind myself, my heirs, executor, and administrators to warrant and forever defend, all and singular, the said premises unto the said Josie Glenn upon the conditions above mentioned, against every person whomsoever lawfully claiming same, or any part thereof.

"Witness my hand at Stephenville, this 29th day of September, A. D. 1898.
"A. J. Glenn."

This deed was duly acknowledged and filed for record on the date of its execution.

On May 4, 1900, A. J. Glenn executed and delivered a general warranty deed to the said Josie Glenn, which purports to convey the property described in the preceding deed in fee-simple title upon a recited consideration of $10 and love and affection. It is in the usual form of a general warranty deed, and in addition thereto contains this provision:

"The above and foregoing deed is intended to take the place of and to stand in lieu of a certain deed heretofore made by me to the said Josie Glenn, on the 29th day of September, A. D. 1898, and I intend herein and by these presents to vest the title to the above-described property absolutely in the said Josie Glenn."

This last-mentioned deed was duly acknowledged on the date of its execution and was filed for record on January 21, 1907. Both of the aforesaid deeds were accepted by Josie Glenn. Mr. and Mrs. Glenn lived together as husband and wife until the death of the former, which occurred in 1901. No children were born to Glenn and his said wife. The plaintiffs in the case are the surviving children and grandchildren of A. J. Glenn by a former marriage. Subsequent to the death of A. J. Glenn, Josie Glenn remarried with A. J. Troy. The plaintiffs had no actual knowledge of the deed dated March 4, 1900, until some time in the year 1917. They had no actual knowledge of the character of Mrs. Glenn's claim, except as was shown by the first-mentioned deed and her actual possession of the premises. On June 16, 1917, Mrs. Troy, formerly Mrs. Glenn, conveyed all of the premises described in the deeds to the defendant Holt, by general warranty deed,

and thereafter Holt conveyed portions of the premises to the other defendants in the suit.

The only question in this case arises upon the construction and effect of that paragraph in the first deed which reads:

"Should there be no issue born to me and my said wife, then this conveyance is intended to vest the title to said property, after the termination of said life estate herein provided, in my legal heirs in the same manner as they would inherit the same under the law."

The appellants insist that under this provision in the deed they took as purchasers an estate in remainder.

[1] Remainders are created by deed or devise, whereas reversions are created by operation of law. It matters not how many estates are carved out of the owner's entire estate, a reversion will be left, provided they do not amount in quantity to his original estate. As to all of the estate, except the particular part granted or devised, the original owner remains still the owner, in all respects, as he originally was. He has simply carved out of his original estate a temporary use and enjoyment of it; and when that has been served he is in as if no such grant had been made. The reversion therefore is a present vested estate which the law creates or raises in his favor, and which has all the properties of the original estate held by him, except the right of present possession and enjoyment. 2 Washburn on Real Property (6th Ed.) §§ 1509 and 1511.

The deed in question carved out of the fee a life estate which was granted to Mrs. Glenn, provided the parties should live together as husband and wife. In addition, a contingent remainder was created in favor of possible issue of the grantor and his wife. Suppose Mrs. Glenn had preceded the grantor in death and had died without issue. In such a contingency the particular estate has determined and the indicated remainder dependent upon it has failed, and unquestionably there would be a reversion to the grantor, unless the quoted provision in the deed created a remainder over in favor of the appellants. Madison v. Larmon, 170 Ill. 65, 48 N. E. 556, 62 Am. St. Rep. 356; Sullivan v. Garesche, 229 Mo. 496, 129 S. W. 949, 49 L. R. A. (N. S.) 605.

But to so treat this provision would be to assume that certain persons constituted the legal heirs of a living person when, "strictly speaking, there is no such thing as the heir of a living person." Eckford v. Knox, 67 Tex. 200, 2 S. W. 372. See, also, Vineyard v. Heard, 167 S. W. 22, affirmed by Supreme Court in 212 S. W. 489.

[2] In the contingency instanced, appellants could not have successfully maintained an action against A. J. Glenn for the title and possession of the property, for, in order to do so, they must have proven that they were his legal heirs, and this they could not.

do, for who his legal heirs would be remained unascertained until his death. Upon this view of the case it seems that under the deed in question a reversion in fee remained in A. J. Glenn. This conclusion is well supported by authority.

As heretofore stated, the legal heirs of A. J. Glenn were unascertained when the deed was made and could not be ascertained until his death. So if the deed created an estate in their favor, then it must have been as contingent remaindermen of the fourth class, according to Fearne's classification of contingent remainders.

[3] But they did not take in that character, for the rule as stated in 24 Am. & Eng. Ency. of Law (2d Ed.) p. 398, is as follows:

"An exception to contingent remainders is where the remainder is limited to the heirs of the grantor. This exception rests on the principle that, while such a limitation is designated as a remainder, it is not a remainder at all, but is an estate which continues in the grantor as the reversion in fee."

According to Mr. Washburn this is the well-settled common-law rule. Upon the subject of contingent remainders he says:

"So there are what seem to be exceptions to the fourth class of contingent remainders. Prominent among them are limitations coming within the rule in Shelley's Case. This rule will be more fully explained hereafter, but, as showing how far it forms the exception above referred to, it is proper to state that it is accepted as one of the dogmas of the common law that if one makes a limitation to another for life, with a remainder over mediately or immediately to his heirs, or the heirs of his body, the heirs do not take remainders at all, but the word 'heirs' is regarded as defining or limiting the estate which the first taker has, and his heirs take by descent, and not by purchase. So if a man by his will gives an estate to a devisee for life, with a remainder over to his own heirs, they do not at common law take as remaindermen by the will, but by descent as reversioners and heirs; that being regarded as the better title."

See 2 Washburn on Real Property (6th Ed.) § 1525.

Again at section 1525 the same author says:

"At common law, if a man seized of an estate limited it to one for life, remainder to his own right heirs, they would take, not as remaindermen, but as reversioners; and it would be, moreover, competent for him, as being himself the reversioner, after making such a limitation, to grant away the reversion. And where he made the limitation after a life estate to his own heirs by will, they took as reversioners, and not as purchasers. But by the statute (3 & 4 Wm. IV, c. 106, § 3), a devise to an heir takes effect as such, though it be of the same estate he would otherwise have inherited."

In 23 R. C. L. 516, it is said:

"From the fourth class of contingent remainders must be excepted the cases which fall within the rule in Shelley's Case, a subject which is treated in another title. A second exception is where there is a grant to one for life with remainder to the heirs of the grantor. Here there is, in fact, no remainder; for the limitation, though denominated a remainder, continues in the grantor as his old reversion and does not devolve upon his heirs as purchasers, as it would if it were a remainder, but as his heirs."

In Robinson v. Blankenship, 116 Tenn. 394, 92 S. W. 854, J. M. Blankenship in 1888 conveyed to his wife, M. A. Blankenship, certain real estate. The habendum in the deed read:

"To have and to hold unto the said M. A. Blankenship during her natural life (or so long as she may remain a widow in the event I should die before she does), together with all the appurtenances thereunto belonging, with remainder to me in event she should die before I do, and, should she survive me, then at her death or marriage to my heirs at law."

In 1895 the grantor in this deed made a second deed to his wife, by which he undertook to convey to her the property in fee simple, subject alone to the right upon the part of the grantor to occupy the same and receive the rent thereof during her natural life. Subsequently J. M. Blankenship died, his wife surviving him, and the suit was by his heirs against a mortgagee of Mrs. Blankenship. The heirs insisted that they took as purchasers under the terms of the reservation in the habendum clause in said deed.

The court reviewed the authorities and thus announced its conclusion:

"From the earliest period of the judicial history of this state, the rule in Shelley's Case was recognized and applied by this court, and it required the act of 1851–52 to abolish it. The operation of that act, however, by its terms is confined to a case where a remainder is limited to the heirs, or to the heirs of the body of a person, to whom a life estate in the same premises is given. There has never been a statute passed in this state affecting the other common-law rule which in a case like the present, where the testator or grantor disposing of a life estate, in terms, seeks to create a remainder in his own heirs, lets these heirs in upon the termination of the life estate, as reversioners rather than as remaindermen. As reversioners their estate comes to them by descent and not by purchase, there being nothing in the context in the instrument to indicate that the grantor used the term 'heirs' in the sense of children. This being so, the fee-simple title in the property in controversy was in the grantor, the ancestor of these heirs, and he had the full right to dispose of it as he did in his second deed. It follows that the mortgage made by Mrs. Blankenship conveyed the whole title to the mortgagee, and these defend-

arts setting up a claim under the deed of 1888 are without interest in the same."

So far as we can ascertain, all of the authorities are in accord with the rule announced by the text-writers. See Pryor v. Castleman (Ky.) 7 S. W. 892; Alexander v. De Kermel, 81 Ky. 345; Akers v. Clark, 184 Ill. 136, 56 N. E. 296, 75 Am. St. Rep. 152; Kellett v. Shepard, 139 Ill. 433, 28 N. E. 751, 34 N. E. 254; Mayes v. Kuykendall (Ky.) 112 S. W. 673; Coots v. Yewell, 95 Ky. 367, 25 S. W. 597, 26 S. W. 179.

[4] Appellants insist that the rule announced has been abrogated by article 1111, R. S., which provides that an estate of freehold or inheritance may be made to commence in futuro by deed or conveyance in like manner as by will, but this statute has no application to the question. This statute was enacted to abrogate the rule of the common law that a freehold to commence in futuro could not be conveyed, for the reason that the title would be in abeyance from the execution of the conveyance until the future estate of the grantee should vest. Both the estates in reversion and remainder were known to the common law, and as to them its imperative feudal dogma that a distinct independent freehold estate in land to commence in futuro could not be created had no application, for the reason that the particular estate supported the seizin and fee. The statute in question has reference to estates in expectancy other than estates in reversion and remainder. In this connection see Washburn on Real Property (6th Ed.) §§ 110-127, 1508-1529; 11 R. C. L. 468.

It is also contended that the grantor used the words "my legal heirs" in the sense of my children, and that for this reason appellants took as purchasers; but there is nothing in the context of the instrument to warrant the assumption that the words were used in other than their technical sense. In our opinion the instrument indicates that the words were used in the technical sense.

For the reasons indicated, we are of the opinion that the deed of May 4, 1900, passed the title in fee to Mrs. Glenn; and judgment was properly rendered for the defendants. Affirmed.