W. C. WRIGHT AND OTHERS v. J. R. LEATH, ADMINISTRATOR.

The delivery of a sheriff's bond to the chief justice, for the approval of the
County Court, is a sufficient delivery on the part of the obligors; and a de-
posit and record of it in the proper office, fully evidences its delivery to and
acceptance by the state, and renders it effectual, without other evidence of
approval by the County Court.

ERROR from Rusk.   Tried below before the Hon. W. W.
Morris.

This was a motion by the defendant in error, against W. C.
Wright, sheriff of Rusk county, and the sureties on his official
bond, for the recovery of money collected by him under execu-
tion, which he had failed to pay over.

The only question in the case, arose upon the exceptions taken
by the plaintiffs in error to the ruling of the court, as to the
validity of the sheriff's bond.

The parties waived a jury, and submitted the case to the
court, upon the sufficiency of the bond of Wright, and the ex-
ceptions taken by the defendants to the plaintiff's motion.   The
court adjudged the bond to be valid and binding, and rendered
judgment for the plaintiff.

The bond was in the ordinary form, and in compliance with
the statute, dated the 13th day of August, 1852, and signed by
the principal and sureties.   Attached to it was the oath pre-
scribed by the constitution, to which Wright had duly subscribed,
on the same date, before the chief justice of Rusk county.
Also, on the said bond was the following endorsement:

"I, James E. Glasscock, Chief Justice, do hereby approve
of this bond, this 13th day August, 1852.

"J. E. GLASSCOCK, Chief Justice."

"Filed for record, August 13th, 1852.

"J. L. SWAN, C. C. C., Rusk Co."

The certificate of the clerk of the County Court, which followed the above endorsements, showed that he recorded the said "Bond of W. C. Wright, as sheriff, in book I., page 146, of Records of Bonds, County Officers, &c." This certificate was attested on the 9th day of April, 1853.

*Armstrong & Parsons*, for the plaintiffs in error.—For the plaintiffs in error, we insist, that the court below erred in rendering judgment against them, because the bond upon which this proceeding is based, purporting to be the official bond of Wright, as sheriff, was never approved by the County Court; and was never delivered to the governor, or to any person or persons by law authorized to accept it for him. The bond is void for want of *delivery*, and this is apparent upon its face. In support of this position, we beg leave to invite the court's attention to the authorities upon the subject.

1. "An act defining the office and duties of sheriffs," passed "May 12th, 1846," (Hart. Dig., p. 868, Art. 2882,) *provides* that the bond of a sheriff shall "*be approved* by the County Court of his county, for such sum as may be directed by such court."

2. What did the legislature mean by the words "*County Court,*" used in the act referred to? Did it mean a "*County Court*" composed of one "*chief justice?*" We think not, for at that time no such court existed, in this state. At the time the act was passed, the "*County Court*" consisted of one chief justice, and four commissioners; (Hart Dig., p. 156, Art. 280; and p. 157, Art. 285;) and it must have been this court which the legislature intended, and expressly directed, should fix the amount of, and approve the bonds of sheriffs.

3. Nor is this conclusion in the least disturbed, by a subsequent act of the legislature, organizing county courts, passed March 16th, 1848, (Hart Dig., p. 161, Art. 307.) It is true the first section of this act creates a "County Court" to be composed of one chief justice. But the 11th section, (Art. 317,) which provides for the election of a chief justice, also requires that four commissioners be elected. However, the powers and

3

jurisdiction of the chief justice, when acting without the assistance of the commissioners, are plainly and distinctly defined, and marked out by the 20th section, (Art. 326.) The time of holding his court, and the duties which he shall perform, are clearly and unmistakably stated, and are limited to " the probate of wills, the granting of letters testamentary, of administration, and of guardianship, and the transaction of all business growing out of, or connected with, the powers and jurisdiction of the County Court over executors, administrators and guardians, and the estates of deceased persons, minors, idiots, lunatics, and persons *non compos mentis.*"

The 21st section, (Art. 327,) which fixes the time of holding the court, composed of the chief justice and commissioners, and defines their powers and jurisdiction, furnishes still further evidence, that it was the legislative will and intention, that the chief justice should be limited in his powers and jurisdiction, to *probate matters alone.* It provides, that terms shall be commenced and held " on the *third* Monday in February, May, August and November, in every year, for the transaction of *all business* growing out of, or connected with the powers and jurisdiction of the County Court, *over all matters other than those named in the second and twentieth sections of this act ;* such terms shall be held by the chief justice, *with the assistance of any two or more of the county commissioners.*" The matters named in the second and twentieth sections, relate exclusively to estates of deceased persons, minors, idiots, and persons *non compos mentis.* Then the inquiry arises, can the chief justice, without the assistance of at least two of the commissioners, *direct* the amount of a sheriff's bond and *approve it,* so as to make it valid and binding upon those who have signed it ? Is he the governor's agent, appointed and authorized by law to receive such a bond ? Or would not a sheriff's bond, taken by the chief justice, as in this case, be null and void for want of delivery ? We think it would, and believe we are sustained by authority. (The State v. Shirly and others, 1 Iredell, Law Rep. 597 ; Craw-

ford v. Meredith and others, 6 Georgia, Rep. 552; The State
v. Purcell's Executor and others, 16 Texas Rep. 305.)

These cases are directly in point upon this question, and are
the only adjudications upon it which we have been able to find.
In delivering the opinion of the court, in The State v. Shirly
and others, GASTON, J., says: " His acceptance of the instru-
ment, imparted to it no more validity than it would have received
from the acceptance of any, the humblest individual in the
land." This was a constable's bond, taken by one of the jus-
tices of the County Court. The case of Crawford v. Meredith
and others, was upon a sheriff's bond, which was taken and ap-
proved by two of the justices of the inferior court. The bond
was held a nullity, because it was not approved by at least three
of them. The bond in this case should have been approved by a
County Court, consisting of a chief justice, *" with the assistance
of the commissioners."*

If the bond was not delivered to the governor, or to one au-
thorized to receive it for him, an action cannot be maintained
on it. (Fay v. Richardson, 7 Pickering, Rep. 91; Fitts v. Green,
3 Dev. 291; State v. Oden, 7 Har. & Johns. 108, note.) The
act of recording the bond was no delivery of it. (Maynard v.
Maynard, 10 Mass. Rep. 456; Harrison v. Phillips Academy,
12 Id. 456.)

It may be insisted, that the bond in this case is good as a com-
mon law bond, and valid for one recovery upon it. But we would
inquire, is any bond binding upon the obligors, whether a statu-
tory, common law, or voluntary bond, until it has first been de-
livered to, and accepted by the obligee, or some person author-
ized to receive it for him ?

*Hollingsworth & Jones*, for the defendant in error.

WHEELER, C. J.—The question raised by the exception is,
whether the sheriff's bond, on which this recovery was obtained,
became effectual by delivery, as the bond of the officer, contem-
plated by the statute, (Hart. Dig., Art. 2882.) It is insisted that

it did not, because it does not appear that it was approved by the County Court, but only by the chief justice; and in support of the objection, two decisions, one by the Supreme Court of North Carolina, and the other by the Supreme Court of Georgia, are relied on.

In the former case, (State v. Shirly, 1 Iredell, Law Rep. 597,) a constable, whose bond was in question, had been appointed by a justice who had no authority to make the appointment, and thereupon gave the bond. The court held, that the appointment of the constable was utterly void, and that the bond, not having been taken by a person authorized to take it, was also void. In their opinion, however, the court refer to the decision of the Supreme Court of the United States, in the case of the Bank of the United States v. Dandridge, 12 Wheat. 64, and of Chief Justice MARSHALL, in the United States v. Maurice, 2 Brock. 96, and conclude, upon the authority of these, and similar decisions of other courts, that there may be cases where a bond, payable to the state, though taken by an unauthorized person, if it be for the benefit of the state, may be upheld as valid, on the ground of a presumed acceptance. But they held, that this principle did not apply to the constable's bond, which was not made for the benefit of the state, but only to secure persons who should entrust the constable with the collection of debts.

In a later case, (State v. McAlpin, 4 Iredell, Law. Rep. 140,) the same court held a sheriff's bond, given to secure the performance of his official duties, valid, though not taken in the manner, nor by the persons appointed by law to take it, on the ground intimated in the opinion in the former case; and the authorities there cited, to the effect, that the bond, being for the benefit of the state, its acceptance by the state would be presumed, when delivered to a third person for her use. In the latter case, a doubt is intimated as to the correctness of the former decision, holding the constable's bond void. The court say, that if they erred, the mischief that might otherwise have arisen from the decision, had been corrected by a subsequent

act of the legislature, which removed all ground for reconsidering the question. (4 Iredell, Law Rep. 148.)

The bond in the present case, is given to secure the performance of the official duties of the officer, as well to the state as to individuals ; and on the authority of these decisions, it would be presumed to have been accepted by the state, and consequently to have become effectual by delivery.

The case cited and relied on, from the Georgia Reports, (Crawford v. Meredith, 6 Ga. Rep. 552,) appears to have been decided upon the letter of the statute of that state. The bond was held not to be a good statutory bond, because not taken and approved, as required by the statute. No authority but the statute was cited by the court. The case appears to have received but little consideration, and it is the only case which has come under our observation, which can be regarded as an authority for the appellants, in the present case. On the other hand, we are referred, by counsel for the appellee, to several decisions of courts of the highest respectability, which maintain the validity of bonds like the present, without other evidence of their delivery than is afforded us in the present case. Thus, in Musselman v. The Commonwealth, 7 Barr, 240, the Supreme Court of Pennsylvania held the bond of a constable valid, without evidence of its approval, and that the sureties of the constable could not take advantage of the neglect of the court to swear the constable, or to approve his bond, as required by the statute ; observing, that " the constable's official bond was found among the records of the office, in its proper place ; and though no entry of approval and filing of it was shown, the presumption is, that every thing was rightly done. Incalculable mischief would be done, if these omissions were available. Besides, it would not lie with the sureties to make them ground of objection ; for the approval and filing is not to protect them, but to protect the execution creditors."

So, in the case of Stevens v. The Treasurers, 2 McCord, 107, the Constitutional Court of South Carolina, by the unanimous opinion of the six judges sitting, held the bond of a sheriff valid,

which was approved by only two commissioners, though the statute required its approval by three, before it should be accepted by the treasurers, to whom it was required to be given. The court said, it was the duty of the sheriff to provide and perfect his security, as the statute prescribed; and though the neglect to obtain the approval of the three commissioners "might possibly have afforded a ground for declaring the sheriff's office vacated, still, as long as he remained in office, he must be regarded as an officer, and his own failure to perfect his security cannot be pleaded in bar, against the consequences of his misconduct in not discharging his official duties."

The precise question we are considering, was before the Supreme Court of Massachusetts, in the case of Apthorp v. North, 14 Mass. Rep. 167, upon the bond of a coronor, who was required by statute to give bond in the same manner as sheriffs, whose bonds were required to be approved by the Court of Common Pleas. In an action on the bond, to which the defendants pleaded *non est factum*, it appeared in evidence, that the writing declared on, was signed and sealed by the defendants on the day of its date, and was delivered to, and taken by the subscribing witness into the Court of Common Pleas, of which he was the first justice, for approbation, according to the requirement of the statute, but was not then approved by the court, one or more of the justices doubting the sufficiency of the sureties; subsequently, the bond was found on the files of the clerk of the court of general sessions of the peace, and was then delivered by the clerk to the same subscribing witness, or taken by him from the clerk in court, and carried out by him, he observing at the time, that it had not been approved, and was of no validity. On the same day, he returned it to two of the makers, stating that the court would not approve it; whereupon, one of them tore off his signature and seal, and the other took and kept it. Afterwards, on a former trial of the cause then before the court, the bond was produced by one of the defendants, and had since remained on file in the case. A verdict having been found for the plaintiff on this evidence, it was insisted before the Supreme

Wright v. Leath.

Court, that the bond had not been approved as the statute required, and without such approval, there was no assent on the part of the state, and no contract ever completed; and that there was no delivery, for that the court, to whom it was offered, refused to receive it. But the court held the contrary, and that the verdict was rightly rendered for the plaintiff. Chief Justice Parsons said: "If the fact stated in this case, that the bond declared on was offered to the court for approbation, and was not approved, must necessarily be construed to mean that it was rejected by the court; the inference drawn by the counsel for the defendants, that it never became effectual by a delivery, would be irresistible. But such a conclusion is so inconsistent with other facts in the case, that we cannot adopt it; and the fact, as stated, must be considered as meaning only that there is no evidence of record of any formal approbation by the court. * * * The case would then be, that the bond given to secure the faithful performance of the duty of the coroner, by the principal, was duly executed, and was delivered to the presiding judge of the Court of Common Pleas, who was a subscribing witness, and by him handed to the court. No act of disapprobation by the court is proved; and more than two years afterwards, the bond was found on the files of the Court of Sessions, from whence it was taken and delivered to one of the sureties, who attempted to cancel it by tearing off his name and seal. Now, a delivery to the court, or the putting it upon the files of the court, was, in law, a sufficient delivery, because the bond, is, in effect, made to the commonwealth, although nominally to its officer, the treasurer; and a reception of it by an officer of the government, if it passed regularly through the Court of Common Pleas, would be a completion of the contract. A formal act or certificate of approbation by the court, is not made necessary by the statute. * * * It is not, then, required expressly, that any record or certificate should be made that a bond given was approved; but if such bond is found upon the files, without any evidence accompanying it, that it has been rejected, and the principal has proceeded to execute the

duties of his office, the presumption is violent, if not conclusive, that the bond was received by the court as the security required by the statute." The court accordingly held, that the facts reported, proved the legal existence of the bond, as a contract with the state, and that it was binding upon the obligors.

I have extracted at so much length from the opinion of the court in this case, because the argument is quite applicable to the case before us, and the opinion of the court seems to me, to rest the decision of the question upon the true principle.

Other decisions might be cited, fully maintaining the doctrine that the rule of presuming assent to benefits tendered, applies to corporations, both public and private, as well as to individuals, (United States Bank v. Dandridge, 12 Wheat. 64, and cases cited,) and consequently, that this bond being found in the proper office, and being for the benefit of the state, its acceptance will be presumed. But further references are unnecessary. The case has been thought sufficiently important, to require so extended an examination, on account of the principle, and the consequences it involves, rather than the amount here in controversy.

The bond bears upon itself, evidence that it was delivered for approval to the chief justice of the County Court. That was a delivery to the proper officer, to obtain the approval by the court. It was sufficient on the part of the obligors, and all they could do, to effectuate the delivery and completion of the contract, between themselves and the state. It was found deposited and recorded in the proper office; which fully evidences its delivery to, and acceptance by the state, by the hand of the court entrusted with that duty. The law does not prescribe any particular form of approval by the County Court, nor does it require that their approval shall be made a matter of record. It only requires that the sureties be approved of, and the bond recorded. It became the duty of the clerk to record the bond when it had been approved. The presumption is, that the court made known to the clerk their approval of, and that he thereupon recorded the bond in accordance with his duty, and that all things were rightly done. The bond then became

a contract completed between the obligors and the state, and is a good statutory bond, and, as such, binding on the obligors.    It is scarcely necessary to say, that the fact that the chief justice entered his own approval on the bond, raises no presumption that it was rejected or disapproved by the court.    There is nothing in that or any other fact disclosed by the record, to countervail the presumption of its due acceptance and approval by the court, and that it became effectual by delivery.

The case of The State v. Purcell, 16 Texas Rep. 306, contains an intimation, but only the intimation, of an inclination of opinion counter to our conclusion; but it was unnecessary, and had no influence upon the decision of the case.    For the purposes of this decision, we have considered the question of the sufficiency of the bond, properly raised by the exceptions to the petition or motion; and in that view, which is most favorable to the appellants, it does not become material to decide, whether the failure of the defendants to plead *non est factum* to the bond, or to deny its execution by plea, supported by affidavit, deprived them of the right to dispute its validity, on the ground of a want of complete execution by delivery.

We are of opinion that there is no error in the judgment, and it is affirmed.

Judgment affirmed.

ROBERTS, J., did not sit in this case.