*Decision will be entered under Rule 50.*

PAULINE WILKENS TIDEMANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KARL TIDEMANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 96699, 96700.   Promulgated April 20, 1943.

*J. L. Lockett, Esq.,* for the petitioners.

*Frank B. Schlosser, Esq.,* and *Samuel G. Winstead, Esq.,* for the respondent.

## OPINION.

BLACK, *Judge:* In these proceedings, which have been consolidated, the respondent has determined a deficiency of $795.27 in gift tax for the year 1936 against each petitioner.

On March 17, 1941, the Board entered a memorandum opinion in these proceedings disposing of the issues then raised by the pleadings. Subsequent thereto and before entering any decision on motion of the respondent filed April 1, 1941, "to vacate and set aside report, for rehearing, and for leave to file amended answers" claiming that each deficiency be increased to $1,924.28, the Board on June 11, 1941, granted respondent's motion, "vacated and held for naught" the said memorandum opinion, and directed the respondent's amended answers be filed and the proceedings restored to the Board's circuit calendar for rehearing at Houston, Texas. With leave of the Board, petitioners also filed amended pleadings raising new issues. As the pleadings now stand, the questions at issue are as follows:

(1) Did the respondent err in finding and determining $41,267.40 (instead of $33,646.50 as shown in petitioners' gift tax returns for 1936) to be the value on the date of transfer of a policy of insurance on the life of Pauline Wilkens Tidemann, transferred February 14, 1936, by petitioners as a gift in trust to and for the use and benefit of their five children?

(2) Are petitioners entitled to exclusions in excess of $1,000 in the determination of each of their gift tax liabilities for the taxable year 1936? This amount is the exclusion to which the Commissioner now concedes each petitioner is entitled.

(3) Did the respondent err in applying the specific exemption provisions of section 505 (a) (1) of the Revenue Act of 1932 as amended by section 301 (b) of the Revenue Act of 1935, so as to find and determine against each petitioner a tax for 1936 in respect of $10,000 value of net gifts made by each petitioner prior to January 1, 1936, and, throughout the year in which made, specifically exempted by the law then in force from the amount upon which gift tax was computed?

(4) Did the respondent err in computing net gifts for preceding years in the case of each petitioner by deducting from the gifts made in 1935 the amount of $25,000, representing five exclusions of $5,000 each?

(5) Did the respondent err in including in petitioners' taxable gifts for 1936 any value whatsoever on account of the life insurance policy referred to under question (1)?

(6) Did the respondent err in including in petitioners' taxable gifts for 1936 the full amount of value (instead of the discounted present worth of the future interest therein) of the life insurance policy referred to under question (1)?

(7) Did the respondent err in including in the computation of petitioners' gift tax liabilities for 1936 any sum whatsoever on account of net gifts for 1935, in respect of the property described in the trust indentures dated July 12, 1935?

(8) Did the respondent err in the computation of petitioners' gift tax liabilities for 1936 in including on account of net gifts for 1935 the full amount of value (instead of the discounted present worth of the future interest therein) of the property described in the trust indentures dated July 12, 1935?

(9) Did the respondent err in the computation of petitioners' gift tax liabilities for 1936 in failing to deduct from the amount of gifts in that year the specific exemption of $40,000 allowed under the provisions of section 505 (a) (1) of the Revenue Act of 1932, as amended by section 301 (b) of the Revenue Act of 1935?

At the original hearing, petitioners abandoned issue (3). Although that issue was in form insisted upon in petitioners' amendment to petition lodged August 12, 1941, nothing has been said about it by petitioners in their brief, so we consider it as again abandoned.

The facts have been stipulated and we adopt the stipulations of facts as filed at the original hearing and subsequent hearings as our findings of fact. Such of those facts as seem necessary to an understanding of the issues to be decided are as follows:

During the year 1936 and for many years prior thereto, petitioners were husband and wife, domiciled in and residents of Galveston County in the State of Texas and, as such, were entitled to file Federal gift tax returns on the community property basis. Prior to Feb-

ruary 8, 1936, they were possessed of a substantial community estate comprising and including, among other properties, community funds in excess of $50,000.

Petitioners had five children, as follows:

Constance Elizabeth Leeland, born Nov. 22, 1906
Karl Wilkens Tidemann, born Nov. 3, 1908
Pauline Tidemann Hanson, born Apr. 3, 1910
H. Fred E. Tidemann, born Nov. 24, 1912
Richard Wilkens Tidemann, born Mar. 24, 1916

On February 8, 1936, the life of petitioner Pauline Wilkens Tidemann was insured for $60,000 by a policy issued by the Prudential Life Insurance Co. for which there was paid a single premium of $41,267.40 out of petitioners' community funds. The beneficiaries named were Mrs. Tidemann's executors, administrators, or assigns.

By a trust indenture dated February 14, 1936, petitioners transferred and assigned said policy to the trustee named therein, to be held for the use and benefit of their five children named above under the terms and conditions set forth in the instrument. The policy and assignment were delivered to and accepted by the trustee. The cash surrender value of the policy at the date of transfer was $33,646.50.

In their respective gift tax returns for 1936 each of the petitioners included one-half of $33,646.50, the cash surrender value of the policy at date of gift. In the determination of the deficiencies the respondent increased the value of the policy to $41,267.40, the amount of the single premium paid out of community funds.

In addition to the trust transfer of the life insurance policy above mentioned, the petitioners during 1936 made cash gifts from their community funds to their five children as follows:

To Constance E. Leeland, through a trust created July 12, 1935, for her use and benefit ____ $1,000
To Richard Wilkens Tidemann, through a trust created July 12, 1935, for his use and benefit ____ 1,000
To H. Fred E. Tidemann, through a trust created July 12, 1935, for his use and benefit ____ 1,000
To Pauline E. Tidemann Hansen ____ 1,000
To Karl Wilkens Tidemann ____ 1,000

Each of the petitioners reported one-half of the above cash gifts in his return for 1936. In their respective gift tax returns for 1936 petitioners each deducted the sum of $25,000 representing an exclusion of $5,000 for each of their five children.

The respondent, in his determination of the deficiencies, allowed each petitioner total exclusions of $7,500, representing one exclusion of $5,000 for the gift of the insurance policy on the theory that the trust was the donee of the gift and $2,500 for the cash gifts set forth above.

The pertinent provisions of the trust indenture dated February 8, 1936, are as follows: Under the terms of the instrument the trustee was directed to collect the proceeds of the policy upon the death of Pauline Wilkens Tidemann, and, after the lapse of six months, pay over the income in equal shares to the five beneficiaries. If any of the children should die, either before or after the death of their mother, his or her share was to go to the testamentary appointees of the deceased child, or if none, then to his or her descendants. In the absence of a testamentary disposition, or descendants, the surviving beneficiaries were to take the share of the deceased child. After the collection of the proceeds, the trust immediately terminated upon the death of a daughter or upon a son reaching the age of 45 years, as to that beneficiary, and one-fifth of the corpus and undistributed income became payable. The trustee was empowered, with the consent of the cotrustee, and within his "free and sole discretion," to make partial distribution of trust corpus to any of the beneficiaries prior to the termination of the trust as to such beneficiary. Paragraph 13 of the indenture reads as follows:

13. Dividends in respect of any insurance policy subject to this indenture, paid prior to death of the insured named therein, shall be paid to and received by the Trustee then acting, and by it distributed during the calendar year then current, in equal shares and portions, to the five beneficiaries herein named, or the survivors of them; provided that if any one of said beneficiaries be dead at the time of any such distribution leaving descendants then surviving, such descendants shall receive, per stirpes, such amount as said decedent would receive if living.

The trust instrument expressly provided that it was irrevocable and that donors did not reserve to themselves, or either of them, any right, interest, option or privilege under the policy or in respect of principal or income of the trust estate, nor any right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom, nor any right to effect any change in enjoyment thereof through the exercise of a power, either alone or in conjunction with any person, to alter, amend, or revoke.

Under date of July 12, 1935, petitioners executed five indentures of trust transferring certain community properties to the Hutchings-Sealy National Bank of Galveston, Texas, as trustee, and Karl Tidemann as cotrustee, without valuable consideration, to be held in trust for the benefit of their five children under the terms and conditions set forth in the instruments. No other gifts were made by petitioners during the taxable year 1935. With the exception of the name of the beneficiary, the five indentures of trust were identical. The material provisions of the indenture in the Pauline Tidemann Hansen

trust are summarized as follows: The properties (corporate bonds and stocks listed in detail in schedule A attached to the indenture) were to be held and managed by the trustee, with full power to sell, transfer, lease, exchange, or invest and reinvest. The trustee was to consult with the cotrustee before making changes in investments, but was given explicit power to act independently of the cotrustee. It was directed that the entire net income should "at the direction of the grantor, be paid to the beneficiary or to such other person, persons, firms or corporations (except the grantor) for the benefit of the beneficiary above named, in such amounts and at such time or times as the grantor may, in his sole and absolute discretion direct. Any part of the income not disbursed by each June 30th shall be added to and become a part of the trust principal." It was provided that "this trust shall terminate on June 30, 1955, except as hereinafter limited, but may be extended by the grantor, with the consent of the trustee hereunder, until such date as he may designate." "During the life of this trust, or its extension, such part or portion of the principal, as the grantor, with the consent of the trustee, may direct, may be paid over and delivered to the beneficiary named herein." Distribution at termination of the trust was to be made to the beneficiary, with provision, in the event of death of such beneficiary during the life of the trust, for continuance of the trust during minority of the deceased beneficiary's youngest child, at the expiration of which time distribution was to be made to "the then living children of said beneficiary," income meanwhile being paid to the substituted beneficiaries. If no child survived the deceased beneficiary, the trust property was to pass "to the grantor's children then surviving or to such child's or children's descendants, if not surviving, per stirpes," with provision that in any case where the even dated trust created for grantor's children was still in effect the property would be added to and become a part of the trust for the benefit of such child or children. The trust further provided:

That the Grantor reserves no right whatsoever to revoke this trust and he retains no right to revest in himself title to any part of the corpus or income of the trust fund, but he does reserve the right to change the Trustee to any other corporate Trustee that might be now or hereafter chartered or licensed to do business as such, or to appoint a successor Co-Trustee at any time during his lifetime. * * *

In the determination of the gift tax liability of each of the petitioners for the year 1935 the respondent allowed five exclusions of $5,000, or a total of $25,000. Petitioners accepted the determinations of the respondent, as aforesaid, and no appeals were taken therefrom.

In each of the deficiency notices for 1936 the amount of $20,483.45 shown as "net gifts, preceding years" represents the gifts made in 1935,

after the deduction of a specific exemption of $40,000 and the five exclusions totaling $25,000 which are referred to in the preceding paragraph.

In determining the amount of gift tax involved in these proceedings, the respondent did not allow against value of gifts for 1936 the specific exemption of $40,000 or any part thereof, but applied the said specific exemption of $40,000 against the alleged taxable gifts of petitioners for the year 1935.

On July 12, 1935, the date of execution and delivery of the five indentures of trust involved in these proceedings, petitioners Karl Tidemann and Pauline Wilkens Tidemann and their five children, named severally and respectively as primary beneficiaries of the trust indentures, were apparently in good health. All were living on October 21, 1942, the date of the last hearing in these proceedings.

Petitioner Pauline Wilkens Tidemann was born May 8, 1879. Petitioner Karl Tidemann was born January 24, 1878.

We consider first questions (7) and (9), for the reason that if those questions were decided in petitioners' favor, neither petitioner would be liable for any deficiency and it would not, therefore, be necessary to consider the remaining questions.

The reason why petitioners contend that they are each entitled to a specific exemption of $40,000 for 1936 is that under issue (7) they contend that the transfers to the five trusts executed under date of July 12, 1935, were not completed gifts subject to the gift tax, and that, therefore, there were no gifts for preceding years, and there was no need to use any of the specific exemption of $40,000 prior to the year 1936.

In support of their contention that the transfers to the five trusts executed under date of July 12, 1935, were not completed gifts subject to the gift tax, petitioners argue that if either of the grantors should die prior to the termination of any of the trusts, one-half of the corpora of such trusts would be includable in the gross estate of the respective deceased grantor on at least two grounds, namely, (1) possibility of reverter in the grantor, *Helvering* v. *Hallock*, 309 U. S. 106, and (2) reserved powers in the grantor with respect to the enjoyment of the benefits of the respective trusts, *Porter* v. *Commissioner*, 288 U. S. 436; and that, since the corpora of the trusts would thus be subject to the estate tax, the gifts must be considered as incomplete for gift tax purposes under *Sanford's Estate* v. *Commissioner*, 308 U. S. 39.

It is petitioners' argument that, if the property which is the subject of the gift is transferred in such a manner that it would still be included in the donor's estate for estate tax purposes upon his death, then there is no completed gift. Petitioners' brief, in which this argument is strongly made, was filed prior to the Supreme Court's

decision in two cases which we shall presently cite. It is now well settled that a possibility of a reverter in the donor does not render a gift incomplete. In such a case the only part of the value of the gift which would be excluded from the computation of the gift tax liability would be the value of the possibility of reverter. *Robinette* v. *Helvering*, 318 U. S. 184; *Smith* v. *Shaughnessy*, 318 U. S. 176. There is therefore no merit in petitioners' ground (1), *supra*.

Neither do we think that there were any powers reserved by the grantor in these trusts which would make the gifts incomplete, as alleged in petitioners' ground (2). We do not regard the powers reserved by the grantor in the five trusts created July 12, 1935, as representing such powers as would require the corpora of the trusts to be included in the gross estates of the grantors in case of their death under section 811 (d) of the Internal Revenue Code and that line of cases headed by *Porter* v. *Commissioner*, *supra*. True, the income of each trust was payable to the original beneficiary "in such amounts and at such time or times as the Grantor may, in his sole and absolute discretion, direct." The grantor, however, reserved "no right whatsoever to revoke this trust and he retains no right to revest in himself title to any part of the corpus or income of the trust fund." Neither was there any power reserved to add to or subtract from the beneficiaries or to alter the proportions of the trust property that the respective beneficiaries would receive, such as existed in such cases as *Commissioner* v. *Chase National Bank of New York*, 82 Fed. (2d) 157; *Holderness* v. *Commissioner*, 86 Fed. (2d) 137; *Millard* v. *Maloney*, 121 Fed. (2d) 257; certiorari denied, 314 U. S. 636; and *Commissioner* v. *Bridgeport City Trust Co.*, 124 Fed. (24) 48.

Each trust was to "terminate on June 30th, 1955, except as hereafter limited, but may be extended by the Grantor, with the consent of the Trustee hereunder, until such date as he may designate." Petitioners contend that, since no limit is placed upon the period of extension, which might be to the date of death of the original beneficiary, the extension of the term would, in connection with the accumulation of income into corpus as a result of the grantors' action in refraining from giving direction for distribution or application of income or by refraining from direction or distribution ·from principal of the trust, or both, diminish the benefits which the original or any subsequent beneficiary would receive, or would even entirely cut off such beneficiary from enjoyment of any benefit whatever from the trust. We do not agree with this contention. The beneficiaries of each trust were designated at the time each trust was created on July 12, 1935. Their enjoyment of the trust property would not be subject to any

change through the grantors' exercise of the power to extend the term of the trusts, for the reason that the grantors did not reserve any power to make any changes in the enjoyment of the trust property. That enjoyment would remain the same whether any of the trusts terminated on, prior to, or after June 30, 1955. In the *Porter* case the Supreme Court said: "We need not consider whether every change, however slight or trivial, would be within the meaning of the clause."[1] We hold that the reserved power to merely extend the terms of the several trusts must be considered as confining the power to "matters affecting the mere mechanics" (cf. *Dort* v. *Helvering*, 69 Fed. (2d) 836, 841) of the trusts, and not to be such a power as would require the trust property to be included in the grantors' gross estates under section 811(d) of the Internal Revenue Code in case either of the grantors died during the term of any of the five trusts. Cf. *Herzog* v. *Commissioner*, 116 Fed. (2d) 591; *Commissioner* v. *Marshall*, 125 Fed. (2d) 943.

Even though we should be in error in the above conclusion, which we do not think we are, the mere fact that the property would be includable in the donors' estate for estate tax purposes upon their death would not free them from payment of the gift tax. *Robinette* v. *Helvering, supra; Smith* v. *Shaughnessy, supra.*

Regarding the ground of possibility of reverter argued by petitioners, it seems clear that only upon the failure of any of the five trusts created on July 12, 1935, would there be any reversion to the grantors or their representatives or heirs. Cf. *Philleo* v. *Holliday*, 24 Texas 28, 42–43; *Glenn* v. *Holt*, 229 S. W. 684. The trust instruments themselves did not provide for any reversion to the grantors. It is only by implication that the very remote possibility of a reverter arises. Therefore, it seems clear that this very remote possibility of a reverter, which appears to exist under Texas decisions, is not susceptible to being valued. See *Robinette* v. *Helvering, supra; United States* v. *Frank,* 133 Fed. (2d) 1009.

The instant case was first submitted prior to *Commissioner* v. *Marrs McLean*, 127 Fed. (2d) 942, in which the court reversed the Board and directed that we value the amount of the gift transferred and value the amount not transferred, namely the possibility of reverter. After that decision by the Fifth Circuit, we set the instant case down for hearing at Houston, Texas, on the issue only as to values of the interests transferred to the trusts and the values, if any, of the possibility of reverter. This additional hearing was held in Houston, Texas, October 21, 1942. The following additional facts were stipulated by the parties:

---

[1] The clause referred to is "where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke," contained in section 302 (d) of the Revenue Act of 1926, which is similar to section 811 (d) of the Internal Revenue Code.

1. Karl Tidemann, Petitioner in Docket No. 96700, was born January 24, 1878.

2. At date of execution and delivery of the five indentures of trust (dated July 12, 1935) involved in these proceedings, Petitioners, Karl Tidemann and his wife Pauline Wilkens Tidemann and their five children, named severally and respectively as primary beneficiaries of the said indentures, were in apparent good health. All are living October 21, 1942.

As we have already indicated, there is no evidence in the record before us, including the facts which were stipulated at the hearing October 21, 1942, which will enable us to value the very remote possibility of reverter which remained in petitioners, the grantors. Therefore, we find and hold that there were completed gifts to the full extent of the values of the property transferred by the grantors to these trusts July 12, 1935, as determined by the Commissioner. Nothing is to be subtracted from these values by reason of the possibility of reverter. We hold against petitioners on questions (7) and (9).

Our holding on questions (7) and (9) makes it necessary to consider the remaining questions, which we do in the order previously stated.

As to question (1), the respondent must be sustained on authority of the Supreme Court's decisions in *Guggenheim* v. *Rasquin*, 312 U. S. 254; *United States* v. *Ryerson*, 312 U. S. 260; and *Powers* v. *Commissioner*, 312 U. S. 259.

Question (2) concerns the number and amount of exclusions petitioners are entitled to under section 504 (b) of the Revenue Act of 1932 on the gifts made by them during the year 1936. These gifts by each petitioner may be classified into three classes as follows:

| | |
|---|---|
| (a) One-half of value of single premium life insurance policy to trust created Feb. 14, 1936 | $20, 633. 70 |
| (b) One-half of three cash gifts of $1,000 to each of three trusts created on July 12, 1935 | 1, 500. 00 |
| (c) One-half of two cash gifts of $1,000 direct to each of two children | 1, 000. 00 |
| Total gifts, 1936 | 23, 133. 70 |

In his deficiency notices the respondent, acting on the theory that the donee of a gift in trust was the trust itself rather than the beneficiaries of the trust, allowed each petitioner one exclusion of $5,000 for the gift of the insurance policy to the trust created on February 14, 1936, three exclusions of $500 each for the gifts to the three 1935 trusts, and two exclusions of $500 each for the direct gifts to two of the children, or total exclusions of $7,500.

Subsequent to the decisions of the Supreme Court in *Helvering* v. *Hutchings*, 312 U. S. 393; *Ryerson* v. *United States*, 312 U. S. 405; and *United States* v. *Pelzer*, 312 U. S. 399, which held, among other things, that the donee of a gift in trust was the beneficiary or beneficiaries of the trust rather than the trust itself, we permitted the respondent to file amended answers and allege that the gifts classified above as class (a) and (b) were gifts of "future interests" as that

term is used in section 504 (b) of the Revenue Act of 1932, and that as to those gifts no exclusions were permitted. The respondent, therefore, contends that, instead of the exclusions totaling $7,500 allowed each petitioner in the deficiency notices, only exclusions totaling $1,000 are allowable, namely, two exclusions of $500 each for the direct gifts to two of the children.

Petitioners contend that the transfer of the single premium life insurance policy to the trust created on February 14, 1936, effected present gifts of a life estate to each of their five children; that the total value of these life estates, according to the method of determination referred to in article 19 (7) of Regulations 79, is $14,-852.52; and that they are, therefore, entitled under section 504 (b) to exclusions of $15,852.52 from their 1936 gifts.

Petitioners make no contention for any exclusions on account of the three .cash gifts of $1,000 to each of the three trusts created on July 12, 1935. This is probably due to their contention under question (7) above that gifts to these trusts in 1935 were incomplete and not subject to the gift tax. The respondent has affirmatively alleged that he erred in allowing any exclusions on account of these gifts. For reasons given under question (4) below, we sustain the respondent's affirmative allegations on this point.

Regarding the transfer of the single premium life insurance policy to the trust created on February 14, 1936, we can not agree with petitioners that they are each entitled to exclusions of $14,852.52 on account of this gift. Neither do we agree with respondent that they are entitled to no exclusions. It seems to us that the "proceeds" of the policy payable upon the death of the insured, Pauline Wilkens Tidemann, and the income thereafter to be derived from the investment of these proceeds must be regarded as gifts of future interests upon the following authorities. *United States* v. *Pelzer, supra; Ryerson* v. *United States, supra; Hopkins* v. *Magruder*, 122 Fed. (2d) 693; *Commissioner* v. *Boeing*, 123 Fed. (2d) 86. In the instant case the proceeds from the policy of insurance were not collectible until the death of the insured, and in order for the original beneficiaries to enjoy the proceeds it was necessary for them to survive the insured. Cf. *Fisher* v. *Commissioner*, 132 Fed. (2d) 385.

We think, however, that a different situation exists in regard to the provision made for dividends under paragraph 13 of the trust indenture quoted above. These dividends were to be received by the trustee and distributed each year in equal shares and portions to the five beneficiaries named therein. This would continue during the lifetime of the insured. It was said in *Welch* v. *Paine*, 120 Fed. (2d) 141, that "As applied to the interests of a beneficiary under a trust, a 'future interest' is used by way of contrast to a 'present interest' which is characterized by the *Restatement, supra*, sec. 153, as 'the

right to the immediate beneficial enjoyment of the proceeds of the trust.'" Applying that test to the dividends in respect of the insurance policy in question, we think it must follow that as to such dividends petitioners made a gift of a present interest to their five children. Cf. Paul, Federal Estate and Gift Taxation, ch. 15.11; *Elizabeth H. Fisher*, 45 B. T. A. 958; affd., 132 Fed. (2d) 385; *Alfred D. Edwards*, 46 B. T. A. 815; *Charles* v. *Hassett*, 43 Fed. Supp. 432; *Commissioner* v. *Kempner*, 126 Fed. (2d) 853; and *F. J. Sensenbrenner*, 46 B. T. A. 713.

In the *Sensenbrenner* case the article of the Treasury regulations which was used in arriving at the value of the income interests which were involved was article 19 (7) of Regulations 79, relating to gift tax. We think that article must also be used here, and the part which is applicable reads as follows:

> If a gift consists of the donor's right to receive the entire income of certain property during the life of Z, or for a term of years, and the annual rate of income for a period equal to or exceeding the life expectancy of Z, or for such term of years, is fixed or definitely determinable at the time of the gift, then the value of the gift should be computed as explained above in the case of an annuity. *If the rate of annual income is not determinable, * * * a hypothetical annuity at the rate of 4 per cent of the value of the property should be made the basis of the calculation.* [Italics supplied.]

In the instant case a policy of insurance was taken out on the life of Mrs. Tidemann. The entire premium was paid in one lump sum and it thereby became a paid-up policy for life. It was payable to Mrs. Tidemann's executors, administrators, or assigns. The policy was a dividend paying policy and Mrs. Tidemann was entitled to receive these dividends annually for the term of her life. This right she transferred to the trust, along with the policy of insurance, for the equal benefit of her five children, and the trustee was directed to pay these dividends currently to the five children in equal shares. No authority was given to the trustee to accumulate any part of these dividends. The rate of dividends which the insurance company was obligated to pay annually on the policy is not stipulated by the parties. Inasmuch as the stipulations of facts by the parties are quite complete in most respects, we assume that the rate of dividend which the insurance company was obligated to pay to the owners of the policy from year to year, like most insurance policies, was not determinable in advance. This situation we think brings into play the hypothetical rate of 4 percent which the Treasury has provided in its regulations above quoted.

Respondent in his brief does not argue that Treasury Regulations 79, art. 19 (7), should not be used in valuing the right to receive dividends from paid up insurance policies where the dividend rate is not determinable. In fact he does not argue these regulations at all. He does

argue in his brief that petitioners are not entitled to any exclusions by reason of their gift to their children of this right to receive the dividends on the policy. His argument on that point in his brief was, in part, as follows:

With reference to the trust income, the trustee was directed in paragraph 13, quoted above, to distribute currently any dividends received on the policy prior to the death of the insured to the five children or their descendants. Not only were the number of beneficiaries who would receive the income indefinite and uncertain on February 14, 1936, but also in the present state of the record the amount of income and hence the value of their respective gifts could not be computed with any reasonable certainty on that date.

We do not agree with respondent's statement in the foregoing that the number of beneficiaries who were designated by the grantors of the trust to receive the annual dividends was indefinite and uncertain. It was plainly stated in the trust indenture that the beneficiaries who were to receive these dividends were the settlors' five children. They were named in the trust indenture. They were all living at the time the trust indenture was executed and they are all still living. Therefore, it is clear there is no merit in that part of the Commissioner's contention.

As to the sums of money which these five children would receive annually from these policy dividends, so far as we are advised, it would not be possible to determine in advance. But that the insurance company would disburse some dividends annually on the policy, in view of the fact that it was a paid-up life insurance policy with a cash surrender value of $33,646.50 at the time of the gift, seems certain. We do not understand that there is any dispute between the parties as to that fact. The settlors of the trust realized that these dividends would be paid annually on the policy and, instead of providing that the dividends should accumulate and be added to the proceeds of the policy and all be collected ultimately upon Mrs. Tidemann's death, as they no doubt could have done, they provided that such dividends, when received by the trustee, should be disbursed in the same year to the five children equally.

The fact that the exact amount of these dividends could not be definitely determined in advance does not make impossible the valuation of the right to receive them. The very purpose of article 19 (7) was to meet such a situation when the other factors in the equation are known, namely, the value of the property which was the subject of the gift, in this case $41,267.40, and the life expectancy which determines the duration of the gift of the dividends, in this case the life expectancy of Mrs. Tidemann.

Of course, if the rate of dividends on such a policy was fixed by its terms or if such rate was determinable by evidence, then that rate would have to be used in determining the value of the right to receive them. The regulations so provide. The rate used in such a

case might well be more than 4 percent and, on the other hand, it might be very considerably less. But, as we have already stated, where the rate of earnings is not determinable, as the parties seem to agree in this proceeding, then the hypothetical rate of 4 percent of the value of the property is to be used, as provided by the regulations. Respondent, in support of his argument that no value should be ascribed to this right to receive dividends for the purpose of the $5,000 exclusions, cites *United States* v. *Pelzer, supra,* and *Hopkins* v. *Magruder,* 122 Fed. (2d) 693. These cases are not in point on this particular question. They are in point on the question of future interests, but for reasons we have already stated we hold that the gift of the right to receive dividends from the policy during the life of the insured was not a gift of future interest but was a gift of present interest. Therefore, under article 19 (7) of Regulations 79, we hold that the value of the present interests of the five beneficiaries, by reason of the gift of the annual dividends, was $8,550.05, the details of which are set forth in the margin.[2] Since the dividends were to be distributed each year in equal shares and portions to the five beneficiaries, the value of each beneficiary's share of the gift of the present interest was one-fifth thereof, or $1,710.01. We hold, therefore, that each petitioner is entitled to exclusions of $9,550.05 from their 1936 gifts, computed as follows:

| Name of donee | Value of present interest | Value of direct gift | Total |
|---|---|---|---|
| Constance Elizabeth Leeland | $1,710.01 | | $1,710.01 |
| Karl Wilkens Tidemann | 1,710.01 | $500.00 | 2,210.01 |
| Pauline Tidemann Hansen | 1,710.01 | 500.00 | 2,210.01 |
| H. Fred E. Tidemann | 1,710.01 | | 1,710.01 |
| Richard Wilkens Tidemann | 1,710.01 | | 1,710.01 |
| Total | 8,550.05 | 1,000.00 | 9,550.05 |

Question (4) concerns the number and amount of exclusions petitioners are entitled to under section 504 (b) of the Revenue Act of 1932 on the gifts made by them in 1935 to the five trusts created on July 12, 1935. In his deficiency notices, the respondent allowed five exclusions of $5,000 each on the theory that the donee of the gift was the trust itself rather than the beneficiaries thereof. Following the decisions of *Helvering* v. *Hutchings; Ryerson* v. *United States;* and *United States* v. *Pelzer,* all *supra,* we permitted the respondent to file amended answers and allege that the gifts to the five trusts

---

[2] Under question (1), we decided the value of entire policy was $41,267.40. Therefore, each petitioner gave one-half thereof, or $20,633.70. Under article 19 (7) of Regulations 79, it is assumed that the annual dividends on $20,633.70 will be 4 percent thereof, which is $825.35. This will continue for the life of the insured, Pauline Wilkens Tidemann, who was 57 on the date of the gift. By reference to Table A, the factor for age 57 is 10.35931, which multiplied by $825.35 gives $8,550.05, the value of the gift of the present interest to the five beneficiaries.

created on July 12, 1935, were gifts of "future interests" and that as to those gifts no exclusions were permitted. The material provisions of these trusts are set out above and are also discussed under question (7). In their brief petitioners have not argued this question.

Under no circumstances were the beneficiaries entitled to the present use, possession, and enjoyment of the principal properties of the July 12, 1935, trusts. On the contrary, at date of gift there was no certainty whether, or to what extent, any of the beneficiaries would take upon final disposition. *Elizabeth H. Fisher, supra.* In order to receive the corpus and accumulated income, each original beneficiary must survive the term of his or her trust, a future uncertain event. *United States v. Pelzer, supra.* Furthermore, under the provisions of the trust instruments the payment of the income rested solely within the discretion of the grantors, both as to time and amounts. We hold these gifts to be gifts of future interests. *Winston Paul,* 46 B. T. A. 920; *Lillian Seeligson Winterbotham,* 46 B. T. A. 972; *Welch v. Paine, supra; Commissioner v. Taylor,* 122 Fed. (2d) 714; certiorari denied, 314 U. S. 699; *Commissioner v. Phillips,* 126 Fed. (2d) 851. It follows that petitioners are not entitled to any exclusions on the gifts made by them to the five trusts created on July 12, 1935. While we do not have before us any question as to the determination of deficiencies in petitioners' gift tax for the year 1935, it is necessary and proper to determine what petitioners' net gifts were in 1935 in order that their gift tax liability be correctly determined for the year 1936, which is before us. See *Lillian Seeligson Winterbotham, supra.*

Questions (5), (6), and (8) were all raised by petitioners in their amendments to the petitions lodged with the Board on August 12, 1941, and ordered filed September 3, 1941. Petitioners did not argue these questions in their brief and we regard them as waived.

*Decision will be entered under Rule 50.*