VIVIAN B. ALLEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2505. Promulgated August 15, 1944.

*Arthur Garfield Hays, Esq., James R. Cherry, Esq.,* and *Julian G. Culver, Esq.,* for the petitioner.
*William F. Evans, Esq.,* for the respondent.

SMITH, *Judge*: Our first question is whether the gifts in trust in 1933 and 1935 were gifts of future interests. The determination of the amount of the net gifts for the prior years is a necessary step, under section 502, Internal Revenue Code, in computing the gift tax liability for 1941. See *Margaret A. C. Riter*, 3 T. C. 301.

The respondent has determined that the 1933 and 1935 gifts were gifts of future interests and in computing the net taxable gifts for 1941 he has added back to the net gifts made in the preceding years the $5,000 exclusions claimed and erroneously allowed" in respect of the 1933 and 1935 gifts.

As to both the 1933 and 1935 gifts, the trust agreement provided for the accumulation of the surplus income, over the amount required for the donee's education and support, until the donee should attain the age of 21 years. Thereafter, the income is all to be paid to the donee for life. However, if the donee should die before attaining the age of 21, leaving no children surviving, the principal of the trust, and presumably the accumulated income, will go to the donee's mother, if living, or, if not, to the mother's descendants. Thus, until the granddaughter attains the age of 21 or until her earlier death it can not be determined who will ultimately receive the accumulated income or the principal. In the meantime and during the minority of the granddaughter it is left to the discretion first of her mother, then her father, and then the trustees, to say how much of the income shall be used for her support and education and how much accumulated.

We think that the gifts to the granddaughter were gifts of future interests, as that term has been defined by the Supreme Court in *United States* v. *Pelzer*, 312 U. S. 399. The only material difference between the facts in the instant case and those in the *Pelzer* case is that here the trustees were authorized during the minority of the granddaughter to use as much of the income as might be required for her education, etc., and accumulate the balance, whereas in the *Pelzer* case all of the income was to be accumulated for the beneficiaries for 10 years and then paid to those who were living and 21 years of age. The Court said that:

* * * Here the beneficiaries had no right to the present enjoyment of the corpus or of the income and unless they survive the ten-year period they will never receive any part of either. The "use, possession or enjoyment" of each donee is thus postponed to the happening of a future uncertain event. The gift thus involved the difficulties of determining the "number of eventual donees and the value of their respective gifts" which it was the purpose of the statute to avoid.

It has been held in a number of cases that a gift which is to be made in the discretion of the trustee is a gift of a future interest. *Welch*

v. *Paine*, 130 Fed. (2d) 990; *Winston Paul*, 46 B. T. A. 920; *Lillian Seeligson Winterbotham*, 46 B. T. A. 972; *Mary M. Hutchings*, 1 T. C. 692; affd., *Hutchings-Sealy Nat. Bank* v. *Commissioner*, 141 Fed. (2d) 422; *Estate of W. W. Fondren*, 1 T. C. 1036; affd. (C. C. A., 5th Cir.), 141 Fed. (2d) 419. The distributions and accumulations were to be made at the discretion of the trustees in the 1935 trust and in the discretion of the donee's mother or father or trustees in the 1933 trust.

Even if we assume that there were gifts of present interests in respect of the income of the trusts which was to be applied to the education and support of the granddaughter during her minority, we have no evidence whatever as to how much of the income was intended to be applied or was actually applied for such purposes, and on the evidence of record it would be impossible to place any value on such interests. See *Margaret A. C. Riter, supra*. We do not know anything about the probable requirements of the donee for education and support or anything about the financial affairs of her father, who was legally responsible for her support and education.

As to the accumulated income and principal which the donee was to receive at some future time, provided she survived the appointed date, the gifts were clearly gifts of future interests. *United States* v. *Pelzer, supra.*

In the recently decided case of *Disston* v. *Commissioner*, 144 Fed. (2d) 115, the Circuit Court of Appeals for the Third Circuit held, overruling its earlier case of *Commissioner* v. *Taylor*, 122 Fed. (2d) 714, and reversing a memorandum opinion of this Court, that transfers in trust for the benefit of the settlor's minor children were not gifts of future interests. In the *Disston* case the trustees were directed to apply as much of the income as might be necessary for the education, comfort, and support of the minor children and to accumulate the balance and pay it over to them when they attained the age of 21 years. The court said that the gifts to the minor children were "immediate, definite, absolute and irrevocable," and that:

* * * In no respect did they depend upon the happening of an uncertain future event either for the determination of the donees or the quantum of the gifts. It seems plain, therefore, that the gifts did not constitute transfers of future interests.

The court further said:

The provision for the accumulation of income affected neither the identity of the minor donees nor the value of the gifts. At most, the provision was but compliant recognition by the donor of what the law, out of its solicitude for the safeguarding of a minor's property, would have interposed in the absence of the donor's express direction in such regard. The gifts were the property of the minor donees none the less; and so was the income which recurrently accrued thereon even though it was to be accumulated during the donees' minority. No one else had any interest in or to the gift or the income therefrom. Nor could

any interest therein be acquired by anyone else except through the donees. If the donees should die during their minority, the gifts and all accumulated income would pass as part of their respective estates. The use and enjoyment of the gifts were the minors' from the day the gifts were made. The accumulated income inured alone to their benefit. Furthermore, for the purpose of determining the recipients of the gifts, the possession of the corpus was in the minor donees within the contemplation of the relevant provision of the Revenue Act. See *Helvering* v. *Hutchings*, 312 U. S. 393, 396, where the Supreme Court said that "the beneficiary of the trust to whose benefit the surrender [by the donor] inures * * * is the 'person' or 'individual' to whom the gift is made." In the test laid down by Art. 11 of Regulation 79 for determining a future interest, the terms, "use, possession or enjoyment", are used disjunctively. A present possession of an absolute and irrevocable gift is not, therefore, to be submerged by a supposed lack of use or enjoyment which, in turn, rests upon no more than that the income is accumulated for the minor beneficiary during his minority rather than paid directly into his hands.

The only material difference between the facts in the instant case and those in the *Disston* case is that in the instant case the accumulated income was to go to the granddaughter or her heirs or legatees only in the event that she should attain the age of 21 or should die earlier, leaving children surviving her, while in the *Disston* case the accumulated income and principal was to pass as a part of the children's estates even if they should die during their minority. We are not certain that that difference affords sufficient grounds for distinguishing the cases, but, if not, then we must respectfully disagree with the position taken by the court for the reason that we believe it contrary to a great number of decisions of this Court as well as of the Circuit Courts of Appeals. See cases cited, *supra*, to which might be added the following cases: *Helvering* v. *Blair*, 121 Fed. (2d) 945; *Commissioner* v. *Brandegee*, 123 Fed. (2d) 58; *Pauline Wilkens Tidemann*, 1 T. C. 968.

It will be noted that in reaching its conclusion in the *Disston* case the court found it necessary to overrule its own decision in the *Taylor* case, in which it had reversed this Court. The views of the majority of the court in the *Disston* case seem in substantial accord with those expressed by Judge Waller in his dissenting opinions in *Fondren* v. *Commissioner*, *supra*, and *Hutchings-Sealy Nat. Bank* v. *Commissioner*, *supra*.

The reasons advanced in the *Disston* case for holding the transfers gifts of present interests are in part at least those that would seem to bear more directly upon the question of whether the gifts were vested and absolute, or whether they were contingent or conditional. As we construe the statute, a gift may be absolute in every respect and yet be a gift of a future interest because its use and enjoyment are postponed to some time in the future. This we think is the rationale of *United States* v. *Pelzer*, *supra*. Certainly as to the principal and the income that was to be accumulated, and we can not

even approximate the amount to be accumulated, the use and enjoyment, as well as the possession, by the donees, are to be postponed until a future year and the gift was therefore a gift of a future interest. See dissenting opinion of Judge Biggs in the *Disston* case.

Petitioner makes the argument that under the laws of the State of New York accumulations of trust income for the benefit of a minor can be made only for the period of the beneficiary's minority and that the accumulations of a "discretionary application" trust belong to the minor at all times.

Conceding that this may be true, the question of whether a gift is of a present or of a future interest, within the meaning of the Federal statute, is not one that is controlled by state law. A like contention was made by the taxpayer in the *Pelzer* case, *supra*, but was rejected by the Supreme Court in the following words:

\* \* \* Respondent [the taxpayer], relying on statutes and judicial decisions of Alabama, where the trust was created and is being administered, insists that the gifts to the named grandchildren are present not future interests as defined by Alabama law. He argues that as § 504 (b) does not define the "future interests" gifts of which are excluded from its benefits, they must be taken to be future interests as defined by the local law, and it is the local law definition of future interests which must be adopted in applying the section. But as we have often had occasion to point out, the revenue laws are to be construed in the light of their general purpose to establish a nationwide scheme of taxation uniform in its application. Hence their provisions are not to be taken as subject to state control or limitation unless the language or necessary implication of the section involved makes its application dependent on state law. \* \* \*

Petitioner contends in the alternative that if it should be determined that the 1933 and 1935 gifts were of future interests, the values thereof were not as reported, $98,218.75 and $670,000 respectively, but were $44,825.76 and $324,030.76, respectively. The lesser amounts are the estimated present worth of the right to receive the gifts at the future dates when they shall become wholly subject to the use and enjoyment of the donee or donees.

This contention, we think, is without merit. The statute provides (sec. 1005, Internal Revenue Code; sec. 506, Revenue Act of 1932) that "if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." Thus, gifts of a future interest are valued in the same manner as those of a present interest. There is no authority in the statute for discounting a gift of a future interest by reducing it to present worth. In *Helvering* v. *Blair*, *supra*, the court assumed that the gift of a life interest presently created was a present gift, the value of which might be computed actuarily, but pointed out that because the trustees there had the discretionary power to change the division among the beneficiaries the present interests could not be valued by any known actuarial method.

We think that the value of the gifts was the value of the property transferred on the date that the gifts were made.

The remaining question for consideration is the value for gift tax purposes of 10,000 shares of Commercial Investment Trust Corporation stock transferred by the petitioner to the trust created in 1935 on August 5, 1941. These shares were returned for gift tax purposes at a price of 28⅛. The evidence shows that 1,500 shares of the stock of this company, which were listed on the New York Stock Exchange, were sold on the date of the gift, August 5, 1941, at prices ranging from 30½ down to 29¾. The respondent held, in accordance with his regulations, that the median between the high and low on the date of sale represented the fair market value of the shares for gift tax purposes. (See Regulations 108, sec. 86.19). The petitioner argues that the fair market value of a block of 10,000 shares on the date of the gift was not the median of the prices at which the shares sold on the stock exchange on that date, but was several points less. On brief he contends that the shares should be valued at a price not in excess of $26 per share. This is based upon the testimony of an expert witness.

The theory of the petitioner is that large blocks of shares of stock which are the subject of a gift should be valued at less than small lots of the stock which admittedly would bring approximately the quoted price. This and other courts have held in numerous cases that quoted prices for shares of stock do not necessarily reflect the value of a large block of stock even for gift tax purposes. See *Henry F. duPont*, 2 T. C. 246; *Helvering* v. *Maytag*, 125 Fed. (2d) 55; *Sewell L. Avery*, 3 T. C. 963, and cases cited therein. It does not necessarily follow, however, that, because a large block of shares can not be sold on the stock exchange at the quoted price at the date of gift or within a reasonable time thereafter, such valuation does not reflect value for gift tax purposes. The quoted price of a listed stock is the point at which demand and supply meet so far as a lot of 100 shares is concerned. It is nevertheless true that the quotation price of a listed stock is the best approximation of the market value of all the shares listed. In the absence of any showing that the market is fictitious, it would seem to indicate the fair market value of a large block of shares as well as of a small block.

In the instant case we are not limited to quotations alone for the determination of value. There have been submitted in evidence the volume of trading and quotations for a considerable period of time and also the balance sheets of the Commercial Investment Trust Corporation at the close of 1940 and 1941, as well as the dividend record, etc. From these balance sheets it is noted that the book value of the shares at the close of 1941 was $32.73 per share and only slightly less at the close of the preceding year; also, that most of the assets are current

assets. It further appears that, for a period of more than three years prior to the date of the gift, dividends at the rate of $4 per share were paid upon the stock and that during 1940 the stock sold as high as 56 per share and during 1941 as high as 37⅞ per share.

From a consideration of the entire evidence, we are of the opinion that the determination of the respondent, that the fair market value of the 10,000 shares which were the subject of the gift on August 5, 1941, was 30⅛ per share, was not in excess of the true value.

*Decision will be entered under Rule 50.*